BESSIE R. STERLING *vs.* LEON B. TANTUM.

1. BANKS AND BANKING—ATTACHMENT—TRUST COMPANIES—"BANK".

The conferring on a trust company, after its creation, of full banking powers, makes it a "bank", within *Rev. Code of* 1915, § 4120, making all corporations, except banks, subject to the attachment laws; and this without regard to the department in which are held the funds sought to be reached.

2. TRUSTS—PROPERTY SUBJECT TO ATTACHMENT.

Apparently where it is the duty of a trustee to pay to his *cestui que* trust a sum of money, made certain by the terms of the trust, by an account passed by the trustee, by an agreement between them, or by an order of the court, the *cestui que* trust has an action at law against the trustee to recover such amount and it is attachable in the hands of the latter by a creditor of the former.

(*February* 12, 1915.)

Statement.

PENNEWILL, C. J., and HEISEL, J., sitting.

*Christopher L. Ward* for plaintiff.

*Saulsbury*, *Morris* and *Rodney* for The Equitable Guarantee and Trust Company, garnishee.

Superior Court, New Castle County, January Term, 1915.

Action by Bessie R. Sterling against Leon B. Tantum, with garnishee process to the Equitable Guarantee and Trust Company. Heard on motion to quash garnishee process. Motion granted.

ALIAS FOREIGN ATTACHMENT (No. 78, January Term, 1915) laid in the hands of the treasurer of the Equitable Guarantee and Trust Company for the purpose of summoning it as garnishee.

The plaintiff declared in assumpsit on a certain promissory note made by the defendant for five hundred dollars, payable one month after date thereof, with copy of note attached. Counsel for garnishee, by petition, asked leave of court to appear specially for the purpose of filing an affidavit and moving for a rule to show cause why the attachment should not be dissolved and the garnishment process quashed. Leave granted and the issuance of the rule and service thereof were waived.

In the affidavit, the president and the treasurer of the garnishee company, respectively, depose and say, *inter alia:*

"That the said the Equitable Guarantee and Trust Company is a corporation of the State of Delaware, having the power, by the laws of the said state, among other things to receive deposits of money, discount bills, notes and other evidence of debt and to transact a general banking business, which said powers are actually exercised by the said corporation and it is, therefore, a bank and not subject to the attachment laws of the State of Delaware as by the exemption set out in *section* 4120 of the *Revised Code* of Delaware (1915) *page* 1877."

For the purpose of the hearing upon the rule certain facts were agreed upon by counsel, among them, being:

"That the sum of money sought to be attached in this proceeding in the hands of the Equitable Guarantee and Trust Company was not at the time of the laying of the said attachment in the possession of the said company as a deposit of money made with it in its banking department." But "it is not agreed that there is any sum of money in the hands of the garnishee due to the defendant in the foreign attachment case, and the sole question to be

decided by the court is whether the Equitable Guarantee and Trust Company is, under the facts agreed upon exempt from the operation of the attachment laws of the State of Delaware by virtue of the act of assembly known as *section* 4120 of the *Revised Code*" (1915) which provides that "all corporations doing business in this state, except banks, saving institutions and loan associations, are subject to the operation of the attachment laws of the State of Delaware, as provided in the case of individuals. * * *"

The court, considering that the question of law presented should be decided by the court in banc, did, on the twelfth day of February, A. D. 1915, upon the joint application of the parties, order and direct that the same be heard by the court in banc. Thereupon, counsel for the respective parties filed an agreed statement of facts, the material parts of which are substantially as follows:

1. That the writ of foreign attachment issued, and the service thereof was duly made upon the Equitable Guarantee and Trust Company, garnishee.

2. That the said company was incorporated by an act of the Legislature of the State of Delaware, passed at Dover on the twenty-third day of April, 1889, etc. (copy annexed); to which act a supplement was passed on the twenty-fifth day of April, 1889, etc. (copy annexed).

3. That the said company did, on the fifth day of February, A. D. 1909, duly file an acceptance of the Constitution of the State of Delaware, etc. (copy annexed); that thereafter on the thirteenth day of February, 1909, the said company did procure a renewal of its charter in perpetuity by filing, etc. (copy annexed).

4. That an act entitled "An act to amend an act entitled 'An act to incorporate the Equitable Guarantee and Trust Company' and to make perpetual that company's charter" was thereafter passed by the General Assembly, etc. (copy annexed).

5. That from the time of its incorporation in 1889 down to date, the said company has been carrying on the business authorized by the provisions of its charter including accepting and executing trusts, acting as trustee, investing money, receiving money, jewelry and personal property generally on deposit for safe keeping, acting as receiver, assignee, guardian, executor, administrator or other fiduciary, acting as registrar of stocks and

bonds and as surety, carrying on the business of selling and managing real estate and collecting rents for property owners generally.

6. That since the fifteenth day of March, A. D. 1909, the said company has been carrying on a general banking business in addition to its other functions as mentioned in *paragraph* 5 hereof, including discounting bills, notes and other evidences of debt, receiving deposits of money, buying foreign coins and buying and selling bills of exchange.

7. That in the performance of its various functions and the carrying on of the businesses hereinbefore mentioned, the said company has its business divided into at least three departments, to wit, its trust department; its banking department; and its real estate department, the employees in each of these several departments having their several duties and functions in their own departments, though under the supervision and control of the same general officers of the company; that each of the above mentioned departments keeps its own books of account and occupies its own allotment of office space in the building of the Equitable Guarantee and Trust Company.

It was agreed that all exhibits annexed were to be taken as a part of the statement of facts.

(March 15, 1915.)

The rule came on to be heard before the court in banc.

Argued before PENNEWILL, C. J., and BOYCE, CONRAD, RICE and HEISEL, J. J.

Before beginning the argument, counsel for the garnishee informed the court that the trust funds due Leon B. Tantum, the defendant in this action, were practically ready for distribution; that there are no other funds in the hands of the garnishee due the defendant; and that in the event the court in banc should hold that the garnishee is subject to the attachment laws of the state, they would immediately, upon the opinion of the court being certified to the Superior Court, enter a general appearance in the latter court and file a special declaration (ready for filing)

under *Section* 4127 of the *Revised Code* of 1915. Counsel for the plaintiff stated that he had examined the special declaration, and that he would, upon the filing thereof move for judgment thereon. Copies of the declaration were thereupon handed to the court for inspection.

It was suggested that the Superior Court might consider that the question of law which would be raised thereby, in the event it should be necessary to file it, should also be decided by the court in banc. Counsel for the plaintiff and for the garnishee suggesting it, and consenting thereto, the court in banc decided to hear not only the question which the Superior Court had directed to be heard, but also the question which the filing of the special declaration would raise.

The special declaration set out in detail and at length, the creation of the trust fund in which the defendant was interested; the time or period of its termination; the appointment of the garnishee as trustee upon the death of the last survivor of the original trustees; and that the parties in interest being entitled to the principal of the trust fund, the trustee garnishee passed its account before the Chancellor, the said parties being present and heard, and not objecting, and the account was approved by the Chancellor, reserving only the question of commissions for the trustee; that the trustee then filed a bill before the Chancellor, asking that the defendants therein—the parties in interest—be required to interplead and state their claims, and that the court instruct the trustee as to the distribution of the trust fund, and for allowance of commission; that the defendant in this action filed his answer with an agreement annexed signed by himself and others entitled, fixing and agreeing upon the amount due each in the distribution; that the Chancellor made a decree, taxing costs, fixing commissions and counsel fees, and directing payment to the parties to the agreement, in accordance therewith —the share to be paid to the defendant in this action being six thousand six hundred and fifty-three dollars and sixty-five cents.

ARGUMENT OF COUNSEL FOR PLAINTIFF ON THE RULE.

From 1889 to 1909 the company was indisputably subject to the attachment laws in all respects except as to deposits of money made with it of the same character as those made with banks.

The express exemption of its deposits of money necessarily denies any claim that it could be otherwise exempt.

In 1909 (25 *Del. Laws, c.* 177) it was by an amendment to its charter "vested with banking powers." Banking powers are commonly defined (as in the *Revised Code* of 1915, § 1918) as powers to discount bills and evidences of debt, to receive deposits of money, to buy gold and silver buillion and foreign coins, to buy and sell bills, notes and other evidences of debt and to issue bills, notes or other evidences of debt for circulation as money.

The garnishee trust company was just as much a "bank" before the amendment of 1909 as it was after. But it was not a "bank" then and is not a "bank" now because vesting a corporation with "banking powers" does not necessarily make it a "bank" within the meaning of the statute.

The distinction between a bank and a trust company is well defined. The exercise by a trust company of some of the functions of a bank does not make the company a banking institution. 3 *A. & E. Ency., page* 791.

"Trust company engaged in the business of banking" is an apt description of the Equitable Guarantee and Trust Company.

It is first a trust company acting as trustee, receiver, assignee, guardian, executor, administrator, or other fiduciary, as surety and registrar of stocks and bonds, investing money, receiving personal property on safe deposit, managing real estate and collecting rents. And throughout its twenty-six years of existence it has carried on this trust business as distinct from its banking business as if it had no connection whatever therewith.

It is a trust company engaged in the business of banking, just as it is engaged in the business of dealing in real estate.

Does the company have to answer this attachment? If, by its answer, it appears that it has nothing belonging to the defend-

ant except a deposit of money in its banking department, it can make that clear by a special declaration, or under the plea of *nulla bona*, and the deposit will be exempt by the terms of its charter.

The exemption occurs in a saving clause or exception, in *Section* 4120 which subjects "all corporations doing business in this state, except banks, saving institutions and loan associations," to the attachment laws.

It is a principle of the construction of statutes that provisos and exceptions in statutes are to be strictly construed. 36 *Cyc.* 1163, 1164, and cases cited.

The intention of the legislature in excepting "banks" from the attachment laws was to exempt deposits of money.

It was undoubtedly such deposits of money that were exempt from attachment.

The intent of the statute of 1871, as understood by the legislature, which incorporated this company, was to exempt such deposits.

ARGUMENT OF COUNSEL FOR GARNISHEE ON THE RULE.

The garnishee, the Equitable Guarantee and Trust Company, contends that it is a bank and is so shown to be by the agreed statement of facts filed in this proceeding, and that being a bank it is under the laws of the State of Delaware not subject to the attachment laws, and it should not therefore be compelled to make answer, and that the rule to show cause why the attachment should not be dissolved should be made absolute. *Holland and Crawford v. Leslie and White*, 2 *Harr.* 306, *Chapter* 90, *Volume* 14, *Laws of Delaware*.

Banks, saving institutions and loan associations, if corporations, are not, and never have been subject to the attachment laws of this state. The Equitable Guarantee and Trust Company is a corporation, and it needs only to show that it is a bank. *Section* 2 of the act of 1909, is as follows:

"That the said the Equitable Guarantee and Trust Company be and it is hereby vested with banking powers."

It is contended, that since the passage of said act vesting the company with banking powers it has been and is a bank within the meaning of said *Chapter* 90, *Volume* 14, *Laws of Delaware*, being *Section* 4120 of the *Code* of 1915, which shows that it is the corporation itself which is either subject or not subject to the attachment laws. It cannot be said that whether the corporation is subject to the attachment laws of the state depends upon the manner in which it holds money or property of the defendant. That is a question which is wholly immaterial, for a corporation summoned as garnishee may not have any money in its hands, and if it be not a bank, savings institution or loan association, it is compelled to answer. In short the exemption applies to a banking corporation in its corporate capacity and without any reference to any of its functions or to the business which it may conduct. Citations defining a bank: *Exchange Bank v. Hines*, 3 *Ohio St.* 1, 32; 1 *Morse on Banks and Banking*, § 2; *Bouvier's Law Dictionary;* 1 *Bolles' Modern Law of Banking.*

Inasmuch as the act of 1909 vests the Equitable Guarantee and Trust Company with banking powers, it is, in a measure, unnecessary to seek other authorities to have the word defined.

*Section* 1918, *Revised Code* of 1915, is a legislative definition of the word "banks" as used in *Section* 1, of *Article* 9 of the present *Constitution* of this state which section excludes banks from the operation of the general corporation law provided for by said Constitution. See also *Sections* 2829, 2833, 2835 of the *Code*.

Construing these sections together then, a bank being an association exercising banking powers, and no one being allowed to exercise banking powers without being a corporation, it must necessarily follow that a corporation with banking powers is a "bank".

In *Hamilton National Bank v. American Loan and Trust Co.*, 66 *Neb.* 67, 92 *N. W.* 189, it was held that the defendant although named a trust company was, in fact, a bank.

The business of a bank has in the progress of events been from time to time extended. *Oulton v. Savings Institution*, 17 *Wall.* 109, 21 *L. Ed.* 618; *Veazie Bank v. Fenno*, 8 *Wall.* 533, 539, 19 *L. Ed.* 482.

Argument.

If the question whether or not a corporation, having banking powers, is a "bank" is to be determined by the number of powers the corporation may have in addition to its banking powers, then does the grant of the powers enumerated in the act of Congress creating federal reserve banks change the character of the corporation so that it ceases to be a bank? Will the powers enjoyed by the garnishee corporation, if conferred upon the national banks deprive them of their character as banks? Surely if one of two corporations having precisely the same powers is a bank, it must of necessity follow that the other is also.

The following cases are interesting and enlightening as showing the development of banking system in America: *McCulloch v. State of Md.*, 4 *Wheat.* 316, 4 *L. Ed.* 579; *Briscoe v. Bank of Commonwealth of Ky.*, 11 *Pet.* 257, 9 *L. Ed.* 709; *Veazie v. Fenno*, 8 *Wall.* 533, 19 *L. Ed.* 482; *Mercantile Bank v. New York*, 121 *U. S.* 138, 7 *Sup. Ct.* 826, 30 *L. Ed.* 895.

The garnishee corporation is a bank and not subject to the attachment laws of the State of Delaware.

ARGUMENT FOR PLAINTIFF ON THE SPECIAL DECLARATION.

Can the share or any portion of the share of Leon B. Tantum the defendant be garnished in the hands of the Equitable Guarantee and Trust Company by foreign attachment?

The rules of law governing attachments and garnishment on execution are applicable to attachments and garnishment in foreign attachment. *Section* 4388, *Revised Code* of 1915; *Woolley, Practice*, §§ 1150, 1286-1288.

The right of the attaching creditor to recover against garnishee depends on whether the garnishee has "property, rights, or credits" of the debtor, for which the debtor has a right of action at law against the garnishee. *Woolley, Practice*, §§ 1179, 1190; *Netter v. Stoeckle*, 4 *Penn.* 345, 56 *Atl.* 604; *Odendhal v. Devlin*, 48 *Md.* 444; *Jaquett v. Palmer*, 2 *Harr.* 144; *Brown v. Hartmann*, 1 *Penn.* 195, 40 *Atl.* 60; *Drake on Attachment*, §§ 463, 485, 545; *Hutchins v. Hawley*, 9 *Vt.* 295; *Hoyt v. Swift*, 13 *Vt.* 129, 37 *Am.*

*Dec.* 586; *Indep. Filter v. Hilbig*, 163 *Ill. App.* 16; *Harrell v. Whitman*, 19 *Ala.* 135; *Cook v. Walthall*, 20 *Ala.* 334; *Powell v. Sammons*, 31 *Ala.* 552; *Henderson v. Alabama*, 72 *Ala.* 32; *Alexander v. Pollock*, 72 *Ala.* 137; *Avery v. Lockhard*, 75 *Ala.* 530.

Where the only remaining function and duty of a trustee is to pay over money to his *cestui que* trust, the latter may have an action at law in *indebitatus* assumpsit against the trustee to recover the sum due him. *Perry on Trusts*, § 843; 22 *Ency. Pl. & Pr.* 138, and cases cited; *Buttrick v. King*, 7 *Metc.* (*Mass.*) 20; *Husted v. Stone*, 69 *Vt.* 149, 37 *Atl.* 253; *Case v. Roberts*, *Holts N. P.* 500; *Husted v. Thomson*, 158 *N. Y.* 328, 53 *N. E.* 20; *Topham v. Morecraft*, 8 *Ell. & Bl.* 983; *Vincent v. Rogers*, 30 *Ala.* 471; *Edwards v. Bates*, 7 *Man. & Gr.* 590; *Johnson v. Johnson*, 120 *Mass.* 465; *Howard v. Patterson*, 72 *Me.* 57; *Fitchcock v. Lukens*, 8 *Port.* (*Ala.*) 333; *Rogers v. Daniell*, 8 *Allen* (*Mass.*) 343; *Derome v. Vose*, 140 *Mass.* 575, 5 *N. E.* 478; *McCrea v. Purmort*, 16 *Wend.* (*N. Y.*) 460, 30 *Am. Dec.* 103; *Varet v. New York*, 7 *Paige* (*N. Y.*) 560; *New York v. Roulet*, 24 *Wend.* (*N. Y.*) 505; *Bierbower's Appeal*, 107 *Pa.* 14; *Miller v. Lake*, 24 *W. Va.* 545; *Taft v. Stow*, 174 *Mass.* 171, 54 *N. E.* 506; *Peabody v. Tarbell*, 2 *Cush.* (*Mass.*) 226; *Underhill v. Morgan*, 33 *Conn.* 105; *Coates v. Woodworth*, 13 *Ill.* 654; *Roper v. Holland*, 5 *A. & E.* 99; *Edwards v. Bates*, 7 *Man. & Gr.* 590.

Where the only remaining function and duty of a trustee is to pay over to his *cestui que* trust a sum of money, made certain by the terms of the trust, by an account passed by the trustee, by an agreement between them, or by an order of a court, the *cestui que* trust has an action at law against the trustee to recover such amount, and it is attachable in the hands of the trustee by a creditor of the *cestui que* trust. *Drake on Attachment*, § 509a; *Van Riswick v. Lamon*, 2 *MacArthur* (*D. C.*) 172; *Drake*, §§ 454c, 490; *Estabrook v. Earle*, 97 *Mass.* 302; *McLaughlin v. Swann*, 59 *U. S.* (18 *How.*) 217, 15 *L. Ed.* 357; *Harrington v. La Rocque*, 13 *Or.* 344, 10 *Pac.* 498; *note* 59 *L. R. A.* 385; *Husted v. Stone*, 69 *Vt.* 149, 37 *Atl.* 253.

In cases where it is laid down broadly as a rule of law that trust funds are not attachable in the hands of a trustee, it will be

Argument.

found on examination that the cases were those where the trust was still open and active.

So where in *Woolley on Delaware Practice* it is said that "trust funds in the possession of a trustee are not liable to attachment" (*section* 1179) and "a mere trustee cannot be summoned to answer as garnishee of his *cestui que* trust" (*section* 1172), the only authority cited is *Plunkett v. Le Huray*, 4 *Harr.* 436.

But there are Delaware decisions in the cases of administrators and executors and sheriffs, governed in this respect by the same rules of law. *Jaquett v. Palmer*, 2 *Harr.* 144; *In re Shelly*, 1 *Boyce*, 10, 73 *Atl.* 796; *Fitchett v. Dolbee*, 3 *Harr.* 267; *Reynolds v. Howell*, 1 *Marv.* 52, 31 *Atl.* 875. See, also, *Williams v. Jones*, 38 *Md.* 555; *Cook v. Dillon*, 9 *Iowa* 407, 74 *Am. Dec.* 354; *New England v. Chandler*, 16 *Mass.* 275; *Webb v. Peele*, 7 *Pick.* 247, 19 *Am. Dec.* 284; *Richards v. Allen*, 8 *Pick.* 408.

The reason against the garnishment of executors and administrators and the debtors of the estate, therefore, does not apply when the estate has been settled and an unappropriated or distributive balance has been ascertained. In such a case a legacy or a distributive share may be attached in the hands of the executor or administrator, after the administration account has been adjusted and settled by the register and the extent of their legal liability thus ascertained. *Woolley, Practice*, §§ 1173, 1179; *Fitchett v. Dolbee*, 3 *Harr.* 267, 268; *Reynolds v. Howell*, 1 *Marv.* 52, 31 *Atl.* 875.

And likewise a surplus or balance arising from a sheriff's sale and due the defendant may be attached in the hands of the sheriff. *Woolley, Practice*, § 1179; *Jaquett v. Palmer*, 2 *Harr.* 144; *In re Truxton*, 2 *Marv.* 373, 43 *Atl.* 257; *Farmers' Bank v. Ball*, 2 *Penn.* 374, 377, 46 *Atl.* 751; *In re Shelly*, 1 *Boyce*, 10, 73 *Atl.* 796; *Drake on Attach.* § 508. See, also, *Adams v. Barrett*, 2 *N. H.* 374; *Curling v. Hyde*, 10 *Mo.* 374; *Anderson v. Patty*, 168 *Ill. App.* 151; *Robertson v. Detroit*, 152 *Mich.* 612, 116 *N. W.* 196, 15 *Ann. Cas.* 131; *Weaver v. Davis*, 47 *Ill.* 235.

A receiver or master in chancery after decree of the court for payment of the fund, held the fund prior to the order as an officer of the court, but after the decree of payment the judicial

proceedings were at an end and the execution of the decree for payment of the money was all that remained to be done, and, therefore, the reason for the rule excepting such funds from garnishment ceased, since there could no longer be any embarrassment to the judicial proceedings, hence garnishment would lie. *Dunsmoor v. Furstenfeldt*, 88 *Cal.* 522, 26 *Pac.* 518, 12 *L. R. A.* 508, 22 *Am. St. Rep.* 331; *Piper v. Piper*, 7 *Pa. Dist. R.* 135.

As to clerk of county, court having money under decree of court of chancery, *Wilbur v. Flannery*, 60 *Vt.* 581, 15 *Atl.* 203. As to master in equity, *Gaither v. Ballew*, 49 *N. C.* 488, 69 *Am. Dec.* 763. Commissioner of chancery court, *Fearing v. Shafner*, 62 *Miss.* 791. As to receiver, *Smith v. People*, 93 *Ill. App.* 135; *Russell v. Millett*, 20 *Wash.* 212, 55 *Pac.* 44; *Robertson v. Detroit*, 152 *Mich.* 612, 116 *N. W.* 196, 15 *Ann. Cas.* 131.

The reason for the rule against allowing attachment of funds in the hands of an administrator or executor, a trustee, a sheriff or other court officer before an account is passed or an agreement between the parties as to the amount due or an order of a court, or other circumstance definitely fixing the amount to be paid to the debtor, and making it in fact a debt or legal liability on the part of the garnishee, is that otherwise there would be a conflict of jurisdiction between courts, as between a court of equity in the case of trustees, or a probate court in the case of administrators, and the court of common law in which the garnishment proceeding is instituted. Until the ascertainment of the amount there is not a debt legally collectible in a common law court and so no attachable credit.

This reason is recognized and clearly stated by Judge Woolley in the citation above made. *Woolley on Practice*, § 1173. It is also recognized and stated in the following cases: *Fitchett v. Dolbee*, 3 *Harr.* 267; *Reynolds v. Howell*, 1 *Marv.* 52, 63, 31 *Atl.* 875; *Jaquett v. Palmer*, 2 *Harr.* 144; *In re Shelly*, 1 *Boyce* 10, 73 *Atl.* 796; *Turner v. Gibson*, 105 *Tex.* 488, 151 *S. W.* 793, 43 *L. R. A.* (*N. S.*) 571.

Some confusion might arise from the language of the court in *Plunkett v. Le Huray*, if taken apart from the facts of the case and the rule of law as uniformly applied elsewhere. In that case

it was plain that the trust was an active one; not one where the only thing remaining to be done was to distribute the fund, therefore it was not within the rule.

The court in *Fitchett v. Dolbee* placed its decision squarely on legal liability in an action of assumpsit.

The bill in equity filed by the trustee December 11, 1914, was in fact a bill for instructions to the trustee. The Chancellor was asked to instruct the trustee whether the time had come to make distribution to the *cestui que* trust. To this answers were signed December 31, 1914, and January 2, 1915, and filed January 5, 1915, containing an agreement dated January 2, 1915, as to the amounts to be paid each distributee. The Chancellor's decree did no more, after fixing costs, commissions and counsel fees, than to declare that the fund was distributable and to order its distribution in accordance with the agreement.

Even if it required in this case the decree of the Court of Chancery to settle and determine the trust and declare a fixed sum payable to Leon B. Tantum, that decree was made January 6, 1915, before any answer was made by garnishee herein, and under our statute governing attachments garnishees are required to answer as to "money, goods, chattels, rights, credits or effects of the defendant, liable to attachment, in his hands or possession at the time he was notified of the attachment *or at any time after*" (*Revised Code*, § 4127) up to time of answer. "And if (upon trial on special declaration or pleas of *nulla bona*) it be found that the garnishee had, at the time he was notified of the attachment, *or at any time after and before his plea pleaded* any money, etc., * * * the jury shall render a verdict for the plaintiff."

It is clear, therefore, that the rights of the attaching creditor and the garnishee are tried, not as they may have existed at the time the attachment was laid, but as they were either at that time or at any time after up to the time of the answer or the plea. *Woolley, Practice*, § 1192; *Reynolds v. Howell*, 1 *Marv.* 52, 64, 31 *Atl.* 875; *Woolley, Practice*, § 1194; *Jolls v. Keegan*, 4 *Penn.* 21, 23, 55 *Atl.* 340; *Brown v. Hartmann*, 1 *Penn.* 195, 40 *Atl.* 60.

True it is the garnishee, at the time of his answer, should,

in his answer, cover all the goods, chattels, money, effects, etc., which were in his hands at the time of the service of the attachment or at any time since up to the date of answer. Cullen, J., in Court of Errors and Appeals; *Reynolds v. Howell*, 1 *Marv.* 52, 64, 31 *Atl.* 875; *Drake*, § 671; *Groome v. Lewis*, 23 *Md.* 137, 87 *Am. Dec.* 563; *McPherson v. Snowden*, 19 *Md.* 197.

As a general rule the trustee cannot be charged unless *at the time of the disclosure* (i.e., the answer), the principal defendant had a right of action against him for some indebtedness or property in his possession, etc. *Getchell v. Chase*, 37 *N. H.* 106; *Haskell v. Haskell*, 9 *Metc.* (49 *Mass.*) 545; *Greenleaf v. Perrin*, 8 *N. H.* 273.

A claim uncertain at the time of the attachment but rendered certain at the time of the answer is embraced by the attachment. *Franklin v. West*, 8 *Watts & S.* (*Pa.*) 350; *Sheetz v. Hobensack*, 20 *Pa.* 412.

The conclusion of the plaintiff is, therefore, that a portion of the sum of money in the hands of the garnishee, as disclosed by the special declaration, sufficient to pay the judgment recovered in this case against Leon B. Tantum, is subject to the attachment process and applicable to the payment of such judgment.

At the conclusion of the argument by the counsel for the plaintiff on the special declaration—that is on the question whether the funds in the hands of the garnishee as trustee for Leon B. Tantum, the defendant, might be attached, should the court be of the opinion that the garnishee is not exempt from the attachment laws of the state, counsel for the garnishee stated in reply that they had made an exhaustive examination of the authorities on this point and believed that the contentions of counsel for plaintiff were sound and fully supported by the authorities.

The court's attention was directed to the following Delaware cases as having some bearing on the question raised: *Flanagin & Sons v. Daws*, 2 *Houst.* 476; *Doe ex dem. McMullen v. Lank*, 4 *Houst.* 648; *Jones v. Bush*, 4 *Harr.* 1; *Farmers Bank v. Ball*, 2 *Penn.* 374, 46 *Atl.* 751; *In re Kittinger's Estate*, 9 *Del. Ch.* 71, 77 *Atl.* 24; *Security Trust and Safe Deposit Co. v. Martin et al.*, 92 *Atl.* 245.

Opinion.

The court was of the opinion that the garnishee is exempt from the operation of the attachment laws of the state; and commented briefly on the question raised by the special declaration.

PENNEWILL, C. J., delivering the opinion of the court:

The sole question involved in this case is whether the Equitable Guarantee and Trust Company is a bank within the meaning of *Section* 4120, of the *Revised Code* of 1915, which provides, *inter alia*, that:

"All corporations doing business in the state, except banks, savings institutions and loan associations are subject to the attachment laws of the State of Delaware, as provided in the case of individuals."

Prior to the enactment of this statute corporations were not subject to the attachment laws of this state.

Is a trust company which is vested with banking powers subsequent to its creation, liable to attachment with respect to moneys held by the company, not in its banking capacity but as a trust fund entirely separate and distinct from its banking department? This is the specific question the court are required to determine.

It will be observed from an inspection of the company's charter that deposits made with the company were exempt from attachment "in the same manner as are the deposits of banks and like institutions." This act was passed many years before "banking powers" were expressly given to the company by an act of the legislature passed in 1909.

The company was created a guarantee and trust company, and as such was authorized to receive and hold on deposit money and other property.

Counsel for the attaching creditor argues that the receiving and holding of money on deposit is a banking power. This is not disputed, indeed it is shown by almost every authority cited by the company. It is perhaps not the power that most distinguishes a bank from certain other institutions. It did not originally possess the power of discounting notes or bills. Counsel for

the creditor argues further, that although the company did pos-
sess a banking power it was not thereby made a bank, for if it
was, it would not have been necessary for the legislature, by the
act incorporating the company, to exempt its deposits from
attachment, they would have been exempt under general law;
that although the amendatory act of 1909 vested the company
with general banking powers, it was not thereby made a bank
within the meaning of the act passed in 1871 which exempted
from attachment process banks, savings institutions and loan
associations; that after the passage of that act the company was
no less a trust company than before; it was still a trust company
with additional powers, but not a bank any more than an indus-
trial corporation or railroad company would be if given banking
powers.

Such in brief is the argument forcefully and plausibly pre-
sented by counsel for the attaching creditor. Did the conferring
of banking powers on the company by the amendatory act make
it a bank?

If it did then it was unquestionably exempt thereafter from
attachment no matter in what department of its varied business
the money sought to be attached might be. The company, as a
whole, is a corporate entity and indivisible. Attachment process
is issued against the company and not against any particular
department of the company. So far as the application of the law
is concerned it does not matter whether the money and credits
sought to be attached are in the banking or some other depart-
ment of the company's business, for it is the company that is
attached, and it is the company that must answer, if liable to the
attachment. If it is a bank it is not liable, and cannot be attached
in whole or in part.

Does the conferring of full banking powers upon a trust
company make such company a bank? There would probably be
no doubt about this question if the policy of the law and our
sense of fairness and justice were not opposed to any enlargement
of exemptions under the attachment law.

If the Equitable Trust Company should be held to be a
bank because it is vested with banking powers, the effect would

be, not to exempt its deposits from attachment, for they were exempt before, but to exempt moneys and credits in all other separate departments of the company's large and varied business. It may be that the legislature did not intend or contemplate that the conferring of banking powers on this company should have any such effect. It is not the policy of the law that money or other property of a debtor should be exempt from attachment for his debts. This is manifest from the fact that the only institutions excepted from the operation of the statute are banks, savings institutions and loan associations. Trust companies were not in existence in this state until many years after the attachment statute was passed, and they could not, therefore, have been within the contemplation of the legislature at the time.

In very few states, other than Delaware, are even bank deposits exempt from attachment. It is the policy of the law generally to make a debtor's property liable for his debts, and not to make it easy for him to circumvent his creditors. The exception of certain institutions in this state from the attachment law was not intended to benefit the debtor or assist him in escaping the payment of his debts. It was designed to aid those institutions in the performance of their duties, and mainly by preventing the attachment of their deposits.

In 1871 when the attachment statute was passed there were very few banks in this state, and they were doing a purely banking business. Practically all the property they held that could be attached were deposits of money, and manifestly such was the property the legislature meant to exempt. The exception of moneys and credits that were in no way connected with banking, but held in other and separate departments of a modern trust company, could not have been contemplated at all. In the light of conditions existing at the time it may be fairly assumed that all the law making body sought or intended to do was to exempt deposits connected with banking business.

But while this is all doubtless true, it may be immaterial in the determination of the present case, in the decision of which we must be governed by the law as we find it and not by its effects. The intention of the legislature must be gathered from the lan-

guage of the particular statute and not from what the court think must have been intended in view of then existing conditions and the general policy of the law.

As a general proposition it is unquestionably true that the investing of a corporation with banking powers makes it a bank, no matter by what name it is called. Calling an institution a bank does not make it a bank in legal contemplation if it is not given the powers of a bank. And conversely, calling an institution a trust company does not prevent its being a bank within the meaning of the law, if it possesses and exercises all the powers of a bank. The only way to create a bank is to give it the powers of a bank. That is exactly what has been done in the case of the Equitable Guarantee and Trust Company. The legislature has vested it with all the powers of a bank, and by so doing has made it a bank within the meaning of the statute that excepts banks from the operation of the attachment statute.

We cannot escape the conclusion that when full banking powers are given to a trust company it is thereby made a bank. When it is made a bank the company is exempt from attachment because it is expressly excepted from the operation of the attachment law.

If trust companies, outside of their banking departments, ought to be subject to the attachment laws of the state, the legislature should make them so. The courts have not the power.

We realize that much confusion, and perhaps hardship, might be caused if we held that the conferring of banking powers did not make the company in question a bank. It would not injuriously affect this company because its deposits are exempt from attachment under its charter. But the deposits of other trust companies now or hereafter created may not be expressly exempted and if they are not banks, their deposits would not be exempt from attachment at all.

Confusion might also be caused by the fact that national banks, under a recent act of Congress, are given powers other than banking powers, and the question would arise whether such banks would be liable to attachment with respect to moneys and credits

held in departments separate and distinct from their banking business.

But regardless of possible effects and results, we feel constrained to hold in this case:

1.   That the vesting of the company with banking powers made it a bank within the meaning of the attachment law, and

2.   That the company being a corporate entity, and indivisible so far as the service of process is concerned, it is not liable to attachment in respect to moneys in its trust department, or any other department of its operations, even though it be separate and distinct from its banking business.

In view of the decision above given it is not necessary that the court should express any opinion on another proposition that was strongly and fully argued by counsel for the attaching creditor, viz.:

Where the only remaining function and duty of a trustee is to pay over to his *cestui que* trust a sum of money, made certain by the terms of the trust, by an account passed by the trustee, by an agreement between them or by an order of court, the *cestui que* trust has an action at law against the trustee to recover such amount, and it is attachable in the hands of the trustee by a creditor of the *cestui que* trust by attachment *fi. fa.*, or on foreign attachment, as the case may be.

While it may not be necessary, as already observed, to express any opinion upon this proposition, we think we may properly say that its soundness is admitted by counsel for the company, and supported apparently by all the authorities on the subject.

It is ordered that the foregoing opinion and decision be certified to the Superior Court, New Castle County.

[Signed by the Judges.]

The same was immediately filed with the prothonotary, and the Superior Court, thereupon, made the following order:

"And now to wit, this fifteenth day of March, A. D. 1915, the opinion of the court in banc having been duly certified to this court in accordance therewith, it is now ordered, adjudged and decreed by this court that the motion to quash the garnishee pro-

cess in the above stated case be and the same is hereby granted, and the garnishee dismissed, and that the garnishee have execution for its costs."