**WOOLSEY et al. v. SECURITY TRUST CO. et al.**

No. 7327.

Circuit Court of Appeals, Fifth Circuit.

Dec. 12, 1934.

Rehearing Denied Jan. 11, 1935.

Robert E. Cofer and John D. Cofer, both of Austin, Tex., for appellants.

James H. Hart and James V. Allred, both of Austin, Tex., and Sidney Benbow, of Houston, Tex., for appellees.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellants, creditors of Security Trust Company, petitioned to have it adjudicated a bankrupt on the ground that, while insolvent, a receiver had been appointed for it in the state court, at the suit of the state of Texas. Motions to dismiss for want of jurisdiction to adjudicate it a bankrupt were filed by the Security Company, by Gibson, its receiver, and by the state of Texas.

The trust company's motion was directed at the petition itself as wanting in jurisdictional allegations. Gibson and the state, appearing by interventions, made the same point, and in addition alleged the company's incorporation as a banking and trust company under the laws of Texas, and that by these laws it was under the supervision and control of the banking department and the commissioner of banking. They further alleged that, in the exercise of this supervision and under authority of law, the commissioner had, on May 29, 1933, requested the Attorney General to institute proceedings and place the bank's affairs in the hands of a receiver, and that this had been done; that all that the corporation had done and all that had been done with it had been done under and in accordance with the laws of Texas regulating banking corporations.

Petitioners joining issue, there was a full hearing, resulting in a decree of dismissal. Petitioners have appealed. Not as their main ground, but in a tentative way, they complain that the District Judge heard evidence instead of disposing of the motion to dismiss on the pleadings.

There is no merit at all in this complaint. Petitioners, answering the interventions, definitely joined issue on the matter tendered. All questions of procedure aside, however, it was the duty of the court to determine for itself before proceeding further whether it had jurisdiction, for neither consent nor waiver nor estoppel could give it jurisdiction or permit it to proceed, if in fact the Security Company was a banking corporation exempt from bankruptcy. Vallely v. Northern Fire & Marine Ins. Co., 254 U. S. 348, 41 S. Ct. 116, 65 L. Ed. 297. Petitioners' real complaint is of the finding of the District Judge that the Security Trust Company was a banking corporation. They argue that, though chartered with banking powers, it was formed to be and for a while it was operated as a banking corporation, it was not such a corporation at the time the petition in bankruptcy was filed, but was a moneyed corporation, to wit, a trust company. They urge that not the things it was chartered to do, but those it was actually doing when the receiver was appointed, determine, for the purposes of bankruptcy jurisdiction, whether or not it is exempt from adjudication. They insist that, measured by this rule, the undisputed evidence shows that the Security Company was not a banking corporation. Appellees argue that the purposes for which a company is incorporated, as shown by its charter, determine its nature, and that particularly is this so of a banking corporation, subject, as such corporation is, to complete state supervision and control. They argue further that, if what a corporation does, rather than what it was chartered to do, determines in a proceeding of this kind whether it was a banking corporation, the undisputed evidence on that point establishes that it was such a corporation.

■ A consideration of the Texas corporation and banking laws, of the charter of the company, and of the undisputed facts disclosed by the record leaves us in no doubt that the District Judge was right in finding the company exempt and declining to take jurisdiction. The general corporation statutes of Texas, title 32, Revised Civil Statutes of Texas 1925 (article 1302 et seq., as amended [Vernon's Ann. Civ. St. art. 1302 et seq.]), will be searched in vain to find the authority for organizing a corporation with the powers the Security Company enjoys. That authority is found only in "title 16, Banks and Banking" (article 342 et seq., Vernon's Ann. Civ. St.), the title under which this corporation was formed. This title, in nine chapters, provides comprehensively for chartering and conducting, under strict supervision, the business of banking corporations.

Chapter 1 (article 342 et seq.) creates the office of banking commissioner, gives him general supervision and control over all banking corporations authorized under the act, makes him "superintendent and Instructor of the State Banking System of Texas and of all corporations incorporated under the provisions of this title" (article 347), and directs how that supervision and control shall be exercised. Article 369, that chapter, authorizes him to close any banking corporation, if in his judgment that should be done. Article 370, as amended in 1929, directs him, after taking charge of the bank, to ascertain by a thorough examination its actual financial condition, and, if he is satisfied that it is not in a condition to resume business, to in his discretion either liquidate it himself or notify the Attorney General to proceed to do so as directed in article 371. Article 371 provides that immediately upon receipt of notice the Attorney General shall institute proceedings for the appointment of, and the court shall immediately appoint, a receiver. This article further provides that, "If a State bank or bank and trust company comes voluntarily into the hands of the Commissioner, no receiver shall be appointed, and the Commissioner shall appoint a competent person in lieu thereof."

■ It is settled law in Texas that the purpose of these statutes is to vest the supervision, administration, and liquidation of banks and trust companies in the commissioner as a matter of general public policy in the interest of depositors and the public who deal with such institutions, and that the property of a banking corporation, when being liquidated under the direction of the commissioner of banking either through or without court proceedings, is in custodia legis. Kidder v. Hall, 113 Tex. 49, 251 S. W. 497; Arlitt v. Seaboard Bank & Trust Co. (Tex. Civ. App.) 31 S.W.(2d) 488; Driscoll v. Shaw (Tex. Civ. App.) 24 S.W.(2d) 1106. Cf. National Surety Co. v. Cobb (C. C. A.) 66 F.(2d) 323.

Chapter 2 (article 376 et seq.) "Incorporation," provides the purposes for which a banking corporation may be formed. These are, the establishment of (a) a bank of deposit or discount, or both of deposit and discount; (b) a banking and trust company; (c) a savings bank. Article 379, that chapter, requires the incorporators of any pro-

posed state bank, savings bank, or bank and trust company to make application to the state banking board for a charter. Articles 380 and 381 require the board to examine the articles of association and the character and worth of the incorporators, to inform itself as to the public necessity for the establishment of such corporation, to determine whether it has sufficient capital and that the applicants are acting in good faith, and to grant or refuse the charter in accordance with their findings. Articles 382 and 383 require all state banks transacting business in Texas to hold a certificate of authority from the commissioner to do a banking business, and to keep same conspicuously posted in the banking house where the business is transacted. Each director of any corporation so organized must take an oath to diligently administer the corporation's affairs and that he will not knowingly violate any of the provisions of the banking laws of Texas. Article 392 of chapter 3, "Banks,"[1] describes the powers of banking corporations created under that chapter. Article 396, chapter 4, "Bank and Trust Companies," provides for the creation of bank and trust companies, for the purpose of establishing a bank of deposit or discount, or both deposit and discount, with the powers set out in article 392 and any one or more of the ten following enumerated purposes. These purposes describe powers; some of these are the usual attributes of all, and all of them of some, trust companies.

The Security Trust Company was organized under article 396. It received from the state banking board a charter enumerating as granted to it the banking powers conferred by article 392 and each and every other power conferred by article 396 on companies chartered under it. The banking commissioner issued to it, as bank No. 1327, a certificate of authority to conduct the business of banking, and this certificate it has at all times, as required by law, kept posted and displayed in its place of business. From the time of its organization in 1922 until the receivership, it received deposits running from $208,110.22 in the first year to as high as eight million in 1931. From the time of its organization un-

til the receivership it made many loans, mostly secured. Interest was paid on time deposits and on most of the demand deposits, which were usually large. On some of the demand deposits, the small ones, interest was not paid. It caused to be printed and used checks for the accommodation of its depositors. It was the depositary of the University of Texas, and also received a great many other public accounts. From the time of its organization until it closed it was supervised by the department of banking, its books examined by that department. James Shaw, banking commissioner, testified that from 1927 to 1933 he was familiar with the business and affairs of the Security Trust Company and that during the whole period it was doing a general banking business in the city of Austin, as such business was recognized and conducted under the supervision of the banking department. As a state depositary, in it were deposited funds which under the law could be deposited only with banks. The deposits of the state with the company ran from $300,000 to over a million. During the whole period of its existence it sold exchange, and, while it catered principally to large accounts, it did have small accounts. In addition to being a depositary for the state, this company was depositary for funds of Travis and other counties which under article 2544, Rev. St. Tex. 1925, could not be deposited except in a bank. The general financial conditions in 1931 made it desirable for the company having an enormous number of securities for which there was no market, to conduct its business on a contracting, rather than an expanding, scale. Following out that policy, it discontinued the solicitation of deposits and devoted its efforts to turning its securities into money to meet the pressing demands of its depositors. It continued this course until in May, 1933, when the banking commissioner, convinced that the enormous withdrawals being made by depositors of the bank jeopardized the interests of the remaining depositors and creditors, then took action under the authority of law to have a receiver appointed as set out in the intervention pleas. It is upon this change of policy from one of expan-

[1] Article 392: "Powers of corporation.—Banking corporations shall be authorized to conduct the business of receiving money on deposit, allowing interest thereon, and of buying and selling exchange, gold and silver coins of all kinds; of lending money upon real estate and personal property and upon collateral and personal securities at a rate of interest not ex- ceeding that allowed by law; and of buying, selling and discounting negotiable and non-negotiable commercial paper of all kinds. No such bank shall lend more than fifty per cent of its securities upon real estate, nor make a loan on real estate to an amount greater than half the reasonable cash value thereof."

sion to one of an orderly retreat, forced upon it by stress of circumstances, and the condition resulting from this policy, that appellants rely for their contention that at the time of the filing of the petition in bankruptcy it had ceased to be a bank and had become something else.

Though the statement of deposits at the time the petition was filed show private time deposits, $209,773.43 consisting of savings accounts, time public deposits, $2,792,395.35, trust funds, $11,773.71, demand deposits, $61.51, demand public deposits, state treasurer, $1,316,874.06, making a total of $4,330,878.06, of which only $11,773.71 were trust funds, they argue that the institution was now a trust company, and no longer a bank. They say that the so-called public deposits were not deposits at all; that those of the counties were merely escrow agreements and accounts to evidence the handling for counties whose municipal bonds it had bought, of the funds the counties had secured by their sale, and that the $1,316,874 of state deposits were in effect loans secured by the collateral deposit of county bonds. They argue that the only banking business the company was doing was that evidenced by the $61.51 of checking accounts. That the private time deposits savings accounts were savings bank business, ultra vires of its powers, and therefore not significant in determining its status as a banking corporation, and that the balance of the so-called deposits were not really deposits, but escrow agreements in connection with its trust and investment business of buying and selling bonds. It argues that this evidence spells out not the activities of a bank of deposit and discount, but of a trust company.

We cannot agree with this appraisement. We think it clear that the evidence spells out the activities of a bank of deposit and discount at one time expanding very actively, but at the time of the petition undertaking a voluntary partial, as opposed to an involuntary complete, liquidation. If the argument of counsel were sound, any banking and trust company which, going into voluntary liquidation, ceased to solicit deposits and make loans, would by that act cease to be a bank then subjecting itself to bankruptcy proceedings. Such an argument, of course, defeats itself. But this at last is what appellants' arguments come to. It would be hard, we think, to imagine a case coming more definitely within the

purpose and the letter of section 22, title 11 USCA, "Bankrupts, Who may Become," than this one. The letter of that section excludes banking and insurance corporations; its spirit and purpose, to leave the liquidation of the banking corporations of the country to the well-organized departments of the states and the nation, organized for the purpose of supervising while they are going concerns and of liquidating them when they are not, excludes them. Federal laws provide elaborately for the supervision and liquidation of national banking corporations; the laws of the states do the same for state banks and insurance companies, in order to protect the millions of persons who deal with them on the faith of the protection afforded by direct governmental supervision and control. It was considered that it would be a ruinous thing to the state, to the depositors, and to the creditors to have the elaborate scheme of liquidation which the state provides broken into and nullified by bankruptcy proceedings, and it was intended, by withdrawing jurisdiction over these corporations from the bankruptcy court, that this would not occur. It would be directly contrary to the purposes so definitely and comprehensively expressed, to exempt banking corporations from the act, leaving their administration and liquidation to the state and federal systems devised expressly for them, to hold that this bank and trust company is not exempt, chartered though it was under the state banking laws, with banking privileges and powers, operated though it was under those laws, and now being liquidated, as it is, under them.

While we think our conclusion sufficiently self-demonstrative to stand without the support of authorities, many cases might be cited in support of these views. Some of them are Clemons v. Liberty Savings & Real Estate Corp. (C. C. A.) 61 F.(2d) 448; Gamble v. Daniel (C. C. A.) 39 F.(2d) 447; In re Oregon Trust & Savings Bank (D. C.) 156 F. 319; In re Surety Guarantee & Trust Co. (C. C. A.) 121 F. 73, 74; Sterling v. Tantum, 5 Boyce (Del.) 409, 94 A. 176; State of Kansas v. Hayes (C. C. A.) 62 F.(2d) 597; Columbia Ry., Gas & Electric Co. v. State of South Carolina (C. C. A.) 27 F.(2d) 52, 59 A. L. R. 665; In re Moench & Sons Co. (C. C. A.) 130 F. 685; Tiffany v. LaPlume Condensed Milk Co. (D. C.) 141 F. 444.

The order appealed from is affirmed.