## McNUTT et ux. v. COX.

### No. 13553.

Court of Civil Appeals of Texas. Fort Worth.

May 28, 1937.

Rehearing Denied Sept. 3, 1937.

county, Tex., on a note in the principal sum of $2625, dated January 31, 1930, due June 2, 1930, payable to the order of the First National Bank of Borger, Tex., bearing interest at 8 per cent. per annum and providing for the customary 10 per cent. additional as attorney's fees. Allegations of ownership by plaintiff were made at the date of the institution of the suit.

As a result of the filing by defendants of a plea of privilege in the Hutchison county district court, the case was transferred to a district court of Tarrant county, where it was tried, without the intervention of a jury, on plaintiff's first amended petition, in which it was alleged, among other things: That the First National Bank of Borger, the payee in the note sued on, transferred and assigned it in due course of business to the Borger State Bank, which latter bank, on the 11th day of January, 1932, became insolvent and was taken over by the banking commissioner of Texas for administration and liquidation; that the banking commissioner, acting in his official capacity as the head of a subdivision of the state government, proceeded as required by law in such matters to liquidate the assets of said bank, and, in due course thereof, sold, transferred, and assigned said note to plaintiff on June 13, 1934; and that plaintiff had continuously owned and possessed the obligation of defendants since the last-mentioned date. Other allegations are shown covering a deed of trust lien on real estate to secure payment of the note, and provisions in the note for extension and renewals, but these are not material to this appeal.

Defendants' answer consisted of a general demurrer and many special exceptions, but, by stipulations between the parties found by the court, the rulings on demurrers become unimportant here. Further answer was by general denial, and specially that the obligation was a community debt for which the wife was not personally responsible. Defendants specially pleaded and relied upon a plea of limitation of four years in defense of plaintiff's alleged cause of action. Upon this defense and the ruling of the court thereon, we must determine this appeal.

Plaintiff resisted defendants' plea of limitation upon the grounds: (a) That from January 11, 1932, to June 13, 1934, the note was owned, held, and possessed by the banking commissioner of Texas in his official capacity, and it was therefore in custodia legis, and, for that reason, as well as that

G. R. Lipscomb, of Fort Worth, and Riley Strickland, of Amarillo, for appellant.

Robert C. Pepper, of Fort Worth, for appellee.

SPEER, Justice.

Suit was instituted by L. B. Cox against Ralph McNutt and wife on December 1, 1934, in the district court of Hutchison

it was owned, held, and possessed by the banking commissioner as an arm and branch of the state government, limitation did not run in favor of defendants during that time; (b) that during the time between the maturity of the note and the date of the institution of the suit defendant Ralph McNutt was absent from the state a sufficient length of time to prevent the bar of limitation against plaintiff's cause of action.

The trial court found in favor of Mrs. McNutt on her plea of coverture. Further findings were in favor of plaintiff for the amount of the note, with interest, and attorney's fees, and against defendant's plea of limitation, and judgment was entered accordingly. Defendant Ralph McNutt has perfected his appeal from that judgment.

Appellee presents four assignments of error, but they may all be fairly construed to present only complaints of error in the trial court's rulings in rendering judgment in the face of the plea of limitation.

There is no statement of facts before us, but upon request the trial court filed findings of fact and conclusions of law, and from these we must pass upon the error complained of.

The findings of fact by the court, in so far as they affect the errors complained of were:

"I find that the note matured according to its face four months after its date, on, towit, June 2, 1930, and there were no extensions of the maturity date of said note.

"I find that title and possession of said note was in the Banking Commissioner of the State of Texas, a department of the State of Texas, from January 11, 1932, until June 13, 1934, by reason of the voluntary action of the Board of Directors of said Bank declaring its insolvency and placing the same in the hands of the Banking Commissioner of the State of Texas for liquidation, under such circumstances that the title and possession of said note passed to said Commissioner, who appointed Lee L. Adams special agent and liquidating examiner for the purpose of liquidating said bank.

"I find that from June 2, 1930, the maturity date of said note, until December 1, 1934, the date suit was filed thereon, a period of four years five months and twenty-nine days, that the said defendant Ralph McNutt, was not outside the State of Texas for as much as five months and twenty-nine days.

"I find that defendant Ralph McNutt resided in Tarrant County, Texas, at all times from June 2, 1930, until December 1, 1934, and during said period of time, or a substantial part thereof, he followed an occupation as a traveling salesman which carried him weekly beyond the bounds of the State of Texas, and that while he was not actually beyond the limits of the state of Texas as much as five months and twenty-nine days during said period of time, that he was absent from Tarrant County more than six months on trips commencing in Tarrant County which carried him beyond the boundaries of the State of Texas and ended with his return to Tarrant County; that during said trips the said Ralph McNutt traveled by automobile and his destination would be beyond the boundaries of the State of Texas where he would sell merchandise as a salesman and return to his home in Tarrant County; that there was more than six months time during said period when Ralph McNutt could not have been reached for service of process upon him within the State of Texas upon citation issued to Tarrant County, the county of his residence."

The court concluded as a matter of law:

"During the period of time from January 11, 1932, until June 13, 1934, during which time the title and possession of said note was in the Banking Commissioner of the State of Texas that limitation did not run against the cause of action represented by said note, the same being owned by the Banking Commissioner as a department of the State of Texas under such circumstances as to toll the running of limitation.

"I further find that during the period of time from January 11, 1932, until June 13, 1934, the note was in the hands of the Banking Commissioner of the State of Texas under such circumstances as to be in custodia legis and that limitation did not run during this period of time against the obligation represented by the note.

"I find that the absence of the defendant, Ralph McNutt, from the State of Texas was not of sufficient duration to make inapplicable the statute of limitation and that dependent entirely upon the absence of Ralph McNutt from the State of Texas the statute of four years limitation would apply.

"I find that the absence of the defendant, Ralph McNutt, from Tarrant County, Texas, on trips originating for the purpose

of going beyond the bounds of the State of Texas and returning was of such nature and duration as that the four years statute of limitation had not run against the note in suit."

We believe the court reached the proper conclusions based upon the facts found by him. We shall first notice that phase of the case which involves the period of time the note was owned and possessed by the banking commissioner. We believe that, during the nearly two and a half years the note was with the banking commissioner, it was in custodia legis, that is, in the hands of the state government, operating and functioning through its banking commissioner, the official head of a branch or arm of the government, during which time limitation did not run.

Under title 16, chapters 1 to 9, inclusive, embracing articles 342 to 375c (Vernon's Ann.Civ.St.), the Legislature has created and provided for the regulation and management of a system of "Banks and Banking" in this state. It is in its very nature a very important branch of our commercial and financial relation between citizens in business. Few, if any, persons in the state are not affected by these laws; the right of the state to create such an arm of the government with the powers and functions delegated to it are not at issue; its wisdom is not questioned.

In the case of Board of Insurance Commissioners v. Sproles Motor Freight Lines, 94 S.W.(2d) 769, in which a writ of error was refused, this court held that the Board of Insurance Commissioners of Texas was an arm of the government created for given purposes, and that its rules, regulations, and functions were binding upon the public affected by them.

The Railroad Commission of Texas has many times been held to be an arm or branch of the state government through which it functions in matters covered by the authority delegated to it by the state. Galveston Chamber of Commerce v. Railroad Commission (Tex.Civ.App.) 137 S.W. 737, 746; Railroad Commission v. San Antonio Compress Co. (Tex.Civ.App.) 264 S.W. 214 (writ refused 114 Tex. 582, 278 S. W. 1115); Missouri-K. & T. Ry. Co. v. Railroad Commission (Tex.Civ.App.) 3 S. W.(2d) 489, affirmed by Supreme Court, Producers' Refining Co. v. Missouri, etc., R. Co., 13 S.W.(2d) 679; Houston Chamber of Commerce v. Railroad Commission (Tex.Civ.App.) 19 S.W.(2d) 583, affirmed by Supreme Court 124 Tex. 375, 376, 78 S. W.(2d) 591. In Galveston Chamber of Commerce v. Railroad Commission, supra, the court said: "A suit against the Railroad Commission is a suit against a branch of the state government, and is, in effect, a suit against the state. Unless otherwise expressed in the statute, limitation does not run against the state." In the opinion, many cases, both in this and other jurisdictions, are cited.

It was held in Kinney et al. v. Channel State Bank (Tex.Civ.App.) 288 S.W. 590 (writ refused), the banking commissioner of Texas, by virtue of his office, exercised the functions of the head of an executive department of the state government, and in these matters he is not subject to the orders of any court other than the Supreme Court of the state. The holding that the commissioner's acts were only subject to review by the Supreme Court, however, may, in some instances, be questioned under authority of the holding by the Supreme Court in Kidder v. Hall, Banking Commissioner, 113 Tex. 49, 251 S.W. 497. There an application for mandamus was denied by the court upon the grounds that the district court of the county where the insolvent bank was being liquidated had jurisdiction to pass upon the question involved. The Supreme Court, however, did hold in that case that the banking commissioner by virtue of his office was an arm of the government, and assets of an insolvent bank held by him were in the hands of the law, were in custodia legis.

In Chapman v. Guaranty State Bank (Tex.Com.App.) 267 S.W. 690, it was held that the banking commissioner, in the matter of handling and disposing of the assets of a bank in liquidation, becomes what might be termed a statutory receiver to some extent under the authority and direction of the district court of the county where the liquidation is being administered; to that extent the assets of the insolvent bank were in custodia legis; that they were subject to the orders of the court in matters of sale by the commissioner. To the same effect is the holding in Woolsey v. Security Trust Co. (C.C.A.) 74 F.(2d) 334, 97 A.L.R. 1081.

The authorities were reviewed by the Amarillo Court of Appeals in the case of Federal Trust Co. v. Brand, 76 S.W.(2d) 142, 144 (writ refused). The court had under consideration the claims of depositors of a defunct bank, to moneys in the bank-

ing commissioner's hands, left on deposit by those who had not made demand on the commissioner for payment; the court said: "In the case of Kidder v. Hall, 113 Tex. 49, 251 S.W. 497, Judge Cureton said that the effect of the provisions of the Banking Act in case of insolvency of the institution was to place the funds and assets of the bank in custodia legis. See, also, Arlitt v. Seaboard Bank & Trust Co. (Tex.Civ.App.) 31 S.W.(2d) 488. It is settled law in Texas and elsewhere, so far as we have been able to ascertain, that limitation does not run while property is in the custody of the law. Kansas City, etc., Ry. Co. v. Weaver (Tex.Civ.App.) 191 S.W. 591; 37 C.J. 1047, § 460. As said in the Arlitt Case, the act of the commissioner in taking charge of the bank and its assets placed it completely under the commissioner's control, and the bank from that time ceases to function under its charter, and neither stockholders, directors, or officers had authority to dispose of its assets. It follows that the depositors' rights are in no way affected by the statute of limitation."

We are cited by appellant to the case of Brand v. San Patricio County, 80 S.W. (2d) 460, by the San Antonio Court of Appeals, in which it appears no application for writ of error was made. That court had under consideration the question of the jurisdiction of the district court to determine whether or not the bond held by a county to secure its funds in a depository was collateral security to that afforded by the State Guaranty Fund; it was contended by appellant that, there being only a question of law for determination, the Supreme Court alone had jurisdiction. The court in the discussion referred to the jurisdiction of the Supreme Court as being in 'those matters only in which heads of the executive departments of the state were parties and enumerated those executive heads as contained in article 4, § 1, of the State Constitution, and that of banking commissioner and many other heads of different arms and branches of the government are omitted. We do not think our holding here nor those in the cases cited are in any way conflicting with that opinion; even if it be conceded that they are, in those so indicated by us, we reproduce the voice of our Supreme Court.

The trial court in this case found, as a matter of fact as well as of law, the note sued on was in the possession of the banking commissioner and therefore in custodia legis for nearly two and a half years of the time claimed by appellant as necessary to perfect his plea of limitation. We think there was no error in the holding by the court that limitation had not run against the note sued on.

The trial court further found the action was not barred by limitation for the additional reason that appellant had been absent from Tarrant county a sufficient length of time and in a manner sufficient to prevent the bar; the conclusion of law on this point is shown above and we repeat: "I find that the absence of the defendant, Ralph McNutt, from Tarrant County, Texas, on trips originating for the purpose of going beyond the bounds of the State of Texas and returning was of such nature and duration as that four years statute of limitation had not run against the note in suit." This conclusion is assigned as error. Even though what we have heretofore said is sufficient to support the judgment of the court, because of the insistence of appellant we shall pay our respects to this assignment also.

Article 5537, Rev.Civ.Statutes 1925, reads: "If any person against whom there shall be cause of action shall be without the limits of this State at the time of the accruing of such action, or at any time during which the same might have been maintained, the person entitled to such action shall be at liberty to bring the same against such person after his return to the State and the time of such person's absence shall not be accounted or taken as a part of the time limited by any provision of this title."

If, as in this case, a debtor is not absent from the state at any one time long enough to prevent the running of the statute, but should absent himself on several occasions for short periods, all the time of his absence on the several occasions must be added together and deducted from the whole time in which it is claimed limitation has been running. The rule is stated in Tex. Jur. vol. 28, p. 233, § 134, in this language: "The law is settled that the time of each departure from the state may be considered in determining the whole time of the absence, and when so determined, should be deducted from the period of limitation, and if, after so doing, limitation has not run the debt is not barred." There are many cases cited under the above test and they abundantly support the statement of the law.

■ The court found the facts to be that appellant did make frequent trips outside the state during the time he claims limitation was running against the obligation sued on, but that he as many times returned to his home in Tarrant county. Under conditions which we shall presently mention, the time he was in Tarrant county upon these return visits to his home should be counted in the period of limitation claimed by him. However, to be entitled to claim the time he is in the county under such conditions, his return must be made openly and publicly and of sufficient duration that the appellee, by the exercise of reasonable diligence, could have known of his presence and could have procured the issuance and service of process on him. Tex.Jur. vol. 28, p. 233, § 133; Glenn v. McFaddin (Tex.Civ.App.) 143 S.W. 234; Montgomery v. Brown, 9 Tex.Civ.App. 127, 28 S.W. 834.

■ The pleadings of appellee (plaintiff below) show that more than four years had expired after the maturity of the note and before suit was filed; in the absence of any explanation by the pleader, it would appear that the plea of limitation would be good; the absence from the state was alleged by appellee and the burden rested with him to prove that fact; but it does not follow that the specific dates of appellant's several trips out of the state, the length of time he remained each time, and the date of his return, must be shown by the appellee. In this connection it is said in Tex.Jur. vol. 28, p. 234, § 134: "The plaintiff, however, is not required to prove the precise periods of the defendant's absence; it is sufficient for him to establish facts from which the jury may reasonably conclude that the defendant had not, in the aggregate, been within the limits of the state between the accrual of the cause of action and the institution of the suit a length of time, equivalent to the statutory period applicable to the action."

■ The court found from the testimony that as a fact appellant was not actually beyond the limits of the state as much as five months and twenty-nine days after the accrual of the action and before the filing of the suit, but that "he was absent from Tarrant County more than six months, on trips commencing in Tarrant County which carried him beyond the boundaries of the State of Texas and ended with his return to Tarrant County. * * * That there was more than six months time during said period when said Ralph McNutt could not have been reached for service of process upon him within the State of Texas upon citations issued to Tarrant County, the county of his residence." We construe this to be a finding in effect that the periods of time spent by appellant at his home in Tarrant county, during the time he claims limitation was running against the note sued on, were not of such a nature and duration that appellee could, by the exercise of reasonable diligence, have known of appellant's presence, and have procured service of process upon him. The trial court concluded as a matter of law under these conditions that limitation did not run. Under the authorities cited we believe he was fully warranted in so holding.

The conclusions of law by the trial court are well supported by the facts found, and the contentions of appellant are without merit. The assignments of error are all overruled, and the judgment of the trial court is affirmed.

### On Motion for Rehearing.

We made an erroneous statement in our former opinion in this case, and, while, it does not affect the conclusions reached by us, yet in the interest of accuracy we deem it advisable to correct it.

In referring to the case of Brand v. San Patricio County, 80 S.W.(2d) 460, we said: "In which [case] it appears that no application for writ of error was made." And in our statement of the issues there involved we said: "That court had under consideration the question of the jurisdiction of the district court to determine whether or not the bond held by a county to secure its funds in a depository was collateral security to that afforded by the State Guaranty Fund."

The two quoted statements are here withdrawn, and for the first quotation we desire to say the case did reach the Supreme Court upon application for writ of error and it appears that the writ has been granted.

The second part of the opinion above quoted is misleading, the issue before the court, as disclosed by the opinion, being: Was the depository bond held by the county collateral security for its deposit in the liquidating bank? It being held that such bond was not collateral security, the coun-

ty was entitled to receive its prorata part of the dividends in the hands of the commissioner.

With these explanations, the application for rehearing is overruled.