**STATE OF KANSAS ex rel. BOYNTON, Atty. Gen., et al. v. HAYES et al.**

**No. 660.**

Circuit Court of Appeals, Tenth Circuit.

Nov. 18, 1932.

John G. Egan, Asst. Atty. Gen., and Ralph T. O'Neil, of Topeka, Kan. (Roland Boynton, Atty. Gen., Dunkin Kimble, Asst. Atty. Gen., and J. D. M. Hamilton and Barton E. Griffith, both of Topeka, Kan., on the brief), for appellants.

Frank G. Drenning, of Topeka, Kan. (Edw. Rooney, of Topeka, Kan., on the brief), for appellees.

Before LEWIS and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

POLLOCK, District Judge.

The facts in this case necessary to decision are these:

An involuntary petition in bankruptcy was filed by creditors of an incorporated institution of Kansas called the International Mortgage Trust Company of Topeka. At the time this proceeding was instituted, the trust company was in the hands of appellant Johnson as receiver, appointed under a statute of the state which authorizes the bank commissioner of the state to appoint receivers for banks or trust companies of the state which have failed. On the filing of the petition in involuntary bankruptcy, the Attorney General of the state, in the name of the state, and the receiver Johnson, coming in by way of intervention, filed his motion to dismiss the proceeding for want of jurisdiction. These motions, on a hearing, were denied, and the movants have appealed to this court.

The grounds on which the motions to dis-

miss are predicated are that the trust company, attempted to be proceeded against in involuntary bankruptcy, is by virtue of the laws of this state and in actual fact in operation a banking corporation within the intent and meaning of the National Bankruptcy Act as amended June 25, 1910; and, being a banking corporation, it is not within, but is expressly excepted from, those corporate bodies which may be thrown into involuntary bankruptcy. The National Bankruptcy Act as it stood before the amendment of 1910 read as follows:

"(b) Any natural person, except a wage-earner or a person engaged chiefly in farming or the tillage of the soil, any unincorporated company, and any corporation engaged principally in manufacturing, trading, printing, publishing [mining], or mercantile pursuits, owing debts to the amount of one thousand dollars or over, may be adjudged an involuntary bankrupt upon default or an impartial trial, and shall be subject to the provisions and entitled to the benefits of this Act. Private bankers, but not national banks or banks incorporated under State or Territorial laws, may be adjudged involuntary bankrupts." Section 4b, 30 Stat. 547.

By the amendment of June 25, 1910, 11 USCA, section 22, paragraph (b), reads as follows: "(b) Any natural person, except a wage earner or a person engaged chiefly in farming or the tillage of the soil, any unincorporated company, and any moneyed, business, or commercial corporation, except a municipal, railroad, insurance, or banking corporation, owing debts to the amount of $1,000 or over, may be adjudged an involuntary bankrupt upon default or an impartial trial, and shall be subject to the provisions and entitled to the benefits of this title."

The question presented on this appeal is this: What is the true construction to be placed upon the term "banking corporation" within the intent and meaning of the lawmaking power when that term was employed in the amendment to the Bankruptcy Act of 1910, as it now stands? That is to say, as that term was employed by the lawmaking power, is the trust company involved in this proceeding a banking corporation? If so, it is not subject to the proceeding brought against it, and the same should have been dismissed on the motions made. If, on the other hand, as by the petitioning creditors in bankruptcy asserted, it is a mere moneyed corporation, and not a banking corporation, it is subject to the operation of the Bankruptcy Act, and must be so held.

A statute of the state, section 9—138, R. S. 1923, defines doing a banking business as follows: "Any individual, firm or corporation who shall receive money on deposit, whether on certificates or subject to check, or shall receive money for which it issues its check, draft, bill of exchange or other evidence of indebtedness for which it charges a fee, shall be considered as doing a banking business, and shall be amenable to all the provisions of this act: Provided, That promissory notes issued for money received on deposit shall be held to be certificates of deposit for the purposes of this act."

Now the act as amended does not mention banks as the act did prior to amendment, as shown by the above quotation. That a trust company organized under the laws of this state may and for many years has done a banking business cannot be denied. The ninth subdivision of section 17—2002, R. S. Kansas for 1923, provides as follows: "Ninth. To receive deposits of money from any bank, savings bank, trust company, or from any public officer or board subject to check, or from any person, company, corporation or association upon certificates of deposit, and may allow interest on such deposits; to buy and sell foreign or domestic exchange, gold, silver, foreign coin, or bullion."

A part of section 17—2002 provides as follows: " * * * And executors, administrators, guardians, trustees, assignees, receivers, and all officers of any court, are authorized to deposit all funds and property which may come into their hands with any company incorporated under this act, and all such funds so deposited shall be subject to check."

That many trust companies organized under the laws of this state have done a very large banking business by receiving public funds on deposit subject to check, and the moneys of savings banks, and other banks, for many years past, is a matter of common knowledge, as shown by the record in this case. The trust company involved in this case had on deposit on demand in March of this year, subject to check, moneys of the state, the city of Topeka, and Shawnee county, in amount $491,704.75; and in bank deposits, savings bank deposits, etc., a total of a very large amount, which was deposited on checking account. In short, the very great amount of the business transacted by the trust company in this case was of that nature transacted by banking corporations, and all this banking business was authorized by

the laws under which the trust company was incorporated and was doing business. Section 17—2013 of the act makes provision for the business of the trust company to be done under the supervision of the bank commissioner of the state. Also the act of the state under which the trust company was created provides the same penalties for failure to make reports, for refusals to permit an examination by the bank commissioner's office, as is prescribed by law for banks of the state.

Again, the Legislature of the state in 1931, before this proceeding was instituted, declared trust companies of the state to be under the operation of the banking laws of the state, as follows: "17—2015. *Other Provisions of Banking Law Applicable.* The provisions of the banking law relating to the impairment of capital and insolvency and shareholders' liability and the duty of the bank commissioner in such cases shall also apply to trust companies; and such companies shall pay the same fee for examinations by the bank commissioner as are paid by banks." R. S. 17—2015; Laws 1931, c. 152, § 1; Feb. 14; Rev. St. Supp. 17—2015.

Now, there is found in the banking laws of the state to which trust companies are thus made subject a complete code of procedure for the taking possession of and winding up of banks of the state in case of insolvency. Section 9—130, Supplement to Revised Statutes of Kansas, reads as follows: "9—130. *Insolvency; Examination; Receiver; Duties; Time for Filing Claims.* If, upon examination by the state bank commissioner or his deputy, or from any report made to the bank commissioner, it shall appear that any bank is insolvent, or has willfully violated any requirement of the act of which this is amendatory, it shall be the duty of the bank commissioner to immediately take charge of such bank and all property and effects thereof. The bank commissioner may appoint a special deputy bank commissioner to take charge of the affairs of an insolvent bank temporarily until a receiver is appointed; such deputy shall qualify, give bond and receive compensation the same as the regular deputy; such compensation to be paid by such bank or allowed by the court as costs in case of the appointment of a receiver; Provided, That in no case shall any bank continue in charge of such special deputy for a longer period than six months. Upon taking charge of any bank, the bank commissioner shall as soon as possible ascertain, by a thorough examination into its affairs, its actual condition; and whenever he shall become satisfied that such bank cannot resume business or liquidate its indebtedness to the satisfaction of all its creditors, he shall forthwith appoint a receiver and require of him such bond and security and allow him such reasonable compensation as he deems proper; such compensation to be subject to the approval of the district court of the county in which such bank is located, upon the application of any party in interest. Such receiver, who shall be a resident of the state of Kansas, under the direction of the bank commissioner, shall take charge of such bank and its assets, and wind up the affairs and business thereof for the benefit of its depositors, creditors and stockholders. Such receiver shall, upon the order of a court of competent jurisdiction, or the judge thereof in chambers, upon the application of the bank commissioner, sell or compound all bad or doubtful debts due to the bank and sell all personal property of such bank on such terms as the court shall direct, and may, upon like order of such court, sell all real property of such bank on such terms as the court shall direct, and shall, if necessary to pay the debts of such bank, enforce the individual liability of the stockholders. Such receiver shall pay over all moneys received by him to the creditors of the bank as ordered by the bank commissioner: Provided, That the bank commissioner shall appoint any person who the holders of more than fifty per cent of the claims against such banks may agree upon in writing: And provided further, That such creditors so agreeing shall have the right to contract with the person who they may name as to the compensation and charges to be by him received for liquidating the affairs of such bank, and shall make report to the bank commissioner of all his acts and proceedings. All claims of depositors and other creditors must be filed with the receiver within one year after the date of his appointment, and if not so filed such claims shall be barred from participation in the estate of such bank."

It is thus seen that under the many provisions of the statutory law of this state trust companies are made banking corporations. That it was not intended by the Legislature of the state that trust companies should be operated, or, in case of insolvency, the affairs of such corporations should be wound up in bankruptcy, the assets converted into cash and distributed under the provisions of the Bankruptcy Act, and that a discharge of the corporation, and its stockholders and directors should be granted from its remaining indebtedness. Of course, it is un-

doubtedly within the power of Congress to make trust companies of the state, or any other natural or corporate body, or unincorporated company subject to the National Bankruptcy Act, and, if this were done in clear and unequivocal terms, all state laws for their operation in conflict with the act must then be held to yield to the higher force, the national law. But, in the absence of any such express provision of the National Bankruptcy Act, in view of the state laws to which we have referred, and others, it must be held, we think, the provisions of the National Bankruptcy Act do not apply.

There are many decisions, not directly in point in this case, defining what a banking corporation is, as may be seen from Auten v. United States National Bank, 174 U. S. 125, 19 S. Ct. 628, 635, 43 L. Ed. 920. In that case the court defined a bank for doing a banking business, as follows: "Banking in much, if not in the greater part, of its practice, is in strict sense borrowing, and we may well hesitate to condemn it as illegitimate, or regard it as out of the course of regular business, and hence suspicious and questionable. 'A bank,' says Morse (Banks, § 2), 'is an institution, usually incorporated with power to issue its promissory notes intended to circulate as money (known as bank notes); or to receive the money of others on general deposit, to form a joint fund that shall be used by the institution, for its own benefit, for one or more of the purposes of making temporary loans and discounts; of dealing in notes, foreign and domestic bills of exchange, coin, bullion, credits, and the remission of money; or with both these powers, and with the privileges, in addition to these basic powers, of receiving special deposits and making collections for the holders of negotiable paper, if the institution sees fit to engage in such business.' "

In Smith v. Kansas City Title & Trust Company, 255 U. S. 180, 41 S. Ct. 243, 249, 65 L. Ed. 577, it is said: "That Congress has seen fit, in making of these banks fiscal agencies and depositaries of public moneys, to grant to them banking powers of a limited character, in no wise detracts from the authority of Congress to use them for the governmental purposes named, if it sees fit to do so. A bank may be organized with or without the authority to issue currency. It may be authorized to receive deposits in only a limited way. Speaking generally, a bank is a moneyed institution to facilitate the borrowing, lending and caring for money. But whether technically banks, or not, these or-

ganizations may serve the governmental purposes declared by Congress in their creation."

In Warren v. Shook, 91 U. S. 704, 710, 23 L. Ed. 421, Mr. Justice Hunt said: "Having a place of business where deposits are received and paid out on checks, and where money is loaned upon security, is the substance of the business of a banker."

In Oulton v. German Sav. & L. Soc., 17 Wall. 109, 118, 21 L. Ed. 618, the following definition of "bank" is stated: "Strictly speaking, the term bank implies a place for the deposit of money, as that is the most obvious purpose of such an institution. Originally the business of banking consisted only in receiving deposits, such as bullion, plate, and the like for safe-keeping, until the depositor should see fit to draw it out for use, but the business, in the progress of events, was extended, and bankers assumed to discount bills and notes and to loan money upon mortgage, bond, or other security, and at a still later period to issue notes of their own intended as a circulating currency and a medium of exchange instead of gold and silver. Modern bankers frequently exercise any two or even all three of those functions, but it is still true that an institution prohibited from exercising any more than one of those functions is a bank in the strictest commercial sense."

In Western Investment Banking Company v. Murray, 6 Ariz. 215, 223, 56 P. 728, 731, quoting as above from Warren v. Shook, supra, and Oulton v. German Sav. & L. Soc., supra, the court said: "We think, under these definitions, the Western Investment Banking Company is now engaged in the business of banking, and, as its name indicates, is a banking association, within the meaning of section 1 of said Act No. 51, and that its shares of stock are therefore taxable."

See, also, Sterling v. Tantum, 5 Boyce (28 Del.) 409, 94 A. 176, 182, as follows:

"But while this is all doubtless true, it may be immaterial in the determination of the present case, in the decision of which we must be governed by the law as we find it and not by its effects. The intention of the legislature must be gathered from the language of the particular statute and not from what the court think must have been intended in view of then existing conditions and the general policy of the law.

"As a general proposition it is unquestionably true that the investing of a corporation with banking powers makes it a bank, no matter by what name it is called. Calling an institution a bank does not make it a

bank in legal contemplation if it is not given the powers of a bank. And conversely, calling an institution a trust company does not prevent its being a bank within the meaning of the law, if it possesses and exercises all the powers of a bank. The only way to .create a bank is to give it the powers of a bank. That is exactly what has been done in the case of 'the Equitable Guarantee & Trust Company. The legislature has vested it with all the powers of a bank, and by so doing has made it a bank within the meaning of the statute that excepts banks from the operation of the attachment statute.

"We cannot escape the conclusion that when full banking powers are given to a trust company it is thereby made a bank. When it is made a bank the company is exempt from attachment because it is expressly accepted from the operation of the attachment law."

From all the facts, matters, and things stated, we are of the opinion it must be held the trust company in question is a banking corporation within the contemplation of the law making power of this state, and also in actual operation and effect, and was at the time the bankruptcy proceeding was instituted against it, and hence is by the operation of the National Bankruptcy Act, exempt from, and not subject to, the operation of that act.

The order refusing to dismiss the bankruptcy proceeding for want of jurisdiction must be reversed, with directions to dismiss the same.