Lloyd A. NELSON, Morris F. Nelson and O. K. Anderson, Plaintiffs and Respondents,

v.

DAKOTA BANKERS TRUST COMPANY, also known as Bankers State Bank and Trust Company of Fargo, North Dakota, a corporation, Defendant and Appellant.

No. 8153.

Supreme Court of North Dakota.

Dec. 18, 1964.

Rehearing Denied Feb. 25, 1965.

Wattam, Vogel, Vogel, Bright & Peterson, Fargo, attorneys for plaintiffs and respondents.

Cupler, Tenneson, Serkland & Lundberg, Fargo, attorneys for defendant and appellant.

Helgi Johanneson, Atty. Gen., Paul M. Sand, Asst. Atty. Gen., Bismarck, amici curiae.

MORRIS, Chief Justice.

The plaintiffs, Lloyd A. Nelson, Morris F. Nelson and O. K. Anderson are stockholders of the defendant. The two Nelsons each hold a certificate of common stock in the defendant corporation and the plaintiff Anderson is the owner and holder of a subscription contract for stock of the defendant pursuant to which he made a part payment in cash and has during the time material to this action been treated as a stockholder.

The defendant, as Dakota Bankers Trust Company, was incorporated April 20, 1961, as a surety and trust company under the provisions of Chapter 6-05, NDCC, and qualified to conduct the business of a surety and trust company by complying with the requirements of Section 6-05-05, NDCC.

On August 3, 1962, the defendant filed with the State Examiner for the State of North Dakota a document denominated a "proposal" in which it was stated that the Dakota Bankers Trust Company proposed to expand its power and authority to engage in the general commercial banking business and to exercise all incidental powers necessary to carry on the business of banking in general. The State Examiner caused to be published on September 19, 20, and 21, 1962, a notice of public hearing to

be held on October 2, 1962, which notice in part stated:

"The hearing will be on the proposal that the Bankers State Bank and Trust Company, should have banking powers. The community which they propose to serve is the Northport Shopping Center of the City of Fargo. The hearing is to determine if this area is in need of further banking facilities and whether the corporation is possessed of such reputation and financial standing which will be beneficial to the public welfare of the community, and if the corporation meets the statutory requirement of a bank."

The hearing was had but no action was ever taken by the State Examiner or the State Banking Board with respect to the matters proposed. In the meantime and before the hearing, the defendant, as Dakota Bankers Trust Company, applied to the Secretary of State to amend its articles of incorporation, changing the name to Bankers State Bank and Trust Company, and enumerating additional purposes which would enable it to engage in the general banking business. A certificate showing the amendment was issued by the Secretary of State on August 27, 1962. In September 1962 the Bankers State Bank and Trust Company began conducting a general banking business and continued to do so without complying with Chapter 6–02 and those sections of Chapter 6–03 applicable to banking associations.

The district court rendered judgment in favor of the plaintiffs and respondents in which it decreed that the defendant is engaging in commercial banking which is unauthorized and ultra vires, that the respondents are not obligated on their subscriptions for shares of stock in the defendant corporation as long as it engages in unauthorized and illegal commercial banking, that there is no provision for the assessment of shareholders of the trust company, that the respondents purchased stock or subscribed for common stock of the de-

fendant as a trust company, and that the defendant is obligated to operate only as a trust company. The judgment further enjoined and restrained the defendant from engaging in commercial banking and directed that its activities be confined to those authorized by Chapter 6–05, NDCC, which is the chapter under which the defendant was originally organized and contains statutes pertaining to the organization and operation of annuity, safe deposit, surety and trust companies, and it was provided that the injunction should remain in effect until such time as the defendant has complied with the applicable provisions of Chapters 6–02 and 6–03, NDCC (which pertain to the organization and qualification of banks, their powers, management and operation), and shall have received a duly authorized certificate of authority or charter to engage in commercial banking.

The defendant appeals from the judgment, demands a trial de novo, and in addition thereto sets forth in its brief 17 specifications of error challenging certain findings of fact and conclusions of law by the trial court. It is also urged that this action being one for a declaratory judgment and the plaintiffs having only nominal interests in the corporation, the court should not have enjoined the general banking activities of the defendant.

Bearing in mind that the defendant corporation was incorporated in 1961 as a surety and trust company, amended its articles of incorporation in 1962 whereby its name was changed to Bankers State Bank and Trust Company and the statement of its purposes enlarged to include a general banking business, and that no certificate has been issued by the State Banking Board approving its organization as a banking association or its conduct of a general banking business, we examine the pertinent statutes to determine whether the defendant is legally authorized to conduct such business or whether the conduct of such business is ultra vires the corporation. The prime question is whether general banking powers are conferred upon a corporation by Chap-

ter 6-05, NDCC, which contains the statutes under which the defendant was organized and began its operations as a surety and trust company.

Chapter 6-01, NDCC, embraces statutes under which the state department of banking exists and operates. Among the definitions set forth in Section 6-01-02 are the following:

"2. 'State banking association,' any corporation organized under the laws of this state covering state banking associations or savings banks, and all corporations, partnerships, firms, or associations whose business in whole or in part consists of the taking of money on deposit, excepting national banks, trust companies, and the Bank of North Dakota;

"3. 'Banking institution,' any bank, trust company, bank and trust company, stock savings bank, or mutual savings bank organized under the laws of this state;

" * * *

"8. 'Banking,' the business of receiving deposits, making loans, discounting commercial paper, or buying and selling exchange;

"9. 'Bank,' any association, firm, or corporation engaged in the business of banking."

■ We will bear in mind the distinction between "association" and "institution" in our consideration of various statutes. Chapter 6-02, NDCC, deals with the organization and qualification of banks. Section 6-02-02 provides that an association for carrying on the business of banking may be formed by any number of natural persons, not less than three, at least two-thirds of whom shall be residents of the state, and requires that they enter into articles of association which shall specify in general terms the object for which the association is formed.

A banking association in order to qualify as such is required to prepare an organization certificate containing five items of information set forth in Section 6-02-04, which must be transmitted to the State Banking Board with a request for permission to present it to the Secretary of State with an application for the issuance by him of a certificate of authority. The State Banking Board must then give notice of hearing in the official newspaper of the county in which the association is proposed to be established. Section 6-02-05. After a hearing pursuant to Section 6-02-06, the Board determines whether or not the application for permission to present the certificate to the Secretary of State is approved. Approval must be joined in by all members of the Board. An approved certificate must be recorded in the office of the register of deeds. Section 6-02-07. Section 6-02-08 provides that:

"The association shall cause the organization certificate and the certificate of authority of the secretary of state issued under this title to be published in a newspaper of general circulation printed or published in the municipality or county within which the association is located for at least four consecutive weeks next after the issuing thereof, and proof of such publication shall be filed with the state banking board."

Some sections of Chapter 6-03, NDCC, deal exclusively with the powers, management and operation of banking associations; other sections apply to banking institutions, including trust companies. Section 6-03-01 provides:

"No association shall transact any business, except such as is incidental and necessarily preliminary to its organization, until it has been authorized by the secretary of state to commence the business of banking and has received a certificate of authorization, and such certificate has been returned by the state examiner with his certificate that the capital stock and required surplus

have been paid in full and that all conditions of the law have been strictly complied with."

Section 6–03–02 enumerates the powers of a banking association that has qualified under Chapter 6–02. Among other things it limits the life of the corporation to twenty-five years and requires the creation of a board of directors consisting of an uneven number of members, not less than three nor more than eleven, a majority of whom must be residents of the state of North Dakota. Such an association is given all such incidental powers as are necessary to carry on the business of banking and the specific powers of discounting and negotiating promissory notes, bills of exchange, drafts, and other evidences of debt; receiving deposits; buying and selling exchange, coin and bullion; and loaning money upon real or personal security, or both. It is also given power to insure its deposits with the Federal Deposit Insurance Corporation. Section 6–03–09 limits to five years the power of a banking association to hold possession of certain real estate unless the time has been extended by a certificate of the state examiner. Chapter 6–03, NDCC, contains many other regulations and restrictions applicable to the management and operation of banking associations which we need not further enumerate here.

Chapter 6–05, NDCC, provides for the organization, powers, authority and regulation of annuity, safe deposit, surety and trust companies. It is under this law that the defendant was organized and did business until it expanded into the general banking field in the manner heretofore described. Section 6–05–01 provides that any number of persons, not less than nine, at least three of whom must be residents of this state, may associate themselves and form a corporation for the purpose of transacting business as an annuity, safe deposit, surety and trust company, and shall have perpetual existence. Sections 6–05–04 and 6–05–05 provide that the corporation as a precedent to the right to do business shall deposit certain securities with

the State Treasurer who shall execute and deliver to the corporation a certificate of such deposit, and states that:

"The state treasurer and his successors in office shall hold the said securities so deposited with him as collateral security for the depositors and creditors of the corporation, and for the faithful execution of any trusts which may be imposed lawfully upon and accepted by such corporation."

Section 6–05–08 deals with corporate powers. We quote such portions thereof as the appellant argues supports its contention that it is vested by statute with general banking powers, including the power to accept and pay out demand deposits:

"Such corporation, when qualified as provided by section 6–05–04, shall have all the general powers and privileges of corporations provided by the laws of this state, and in addition thereto, without further qualification, shall have special power and authority:

"1. To acquire, lease, purchase, own, hold, use, improve, mortgage, sell, and convey such real estate and personal property as may be necessary for the convenient transaction of its business. It may acquire real estate by foreclosure or upon compromise or settlement of prior mortgages held by it either as absolute owner or as trustee, and may dispose of the same. No part of the capital, deposits, trust funds, or property owned or held by such corporation, in trust or otherwise, shall be invested in real estate except as herein authorized, unless the investment is made under and by virtue of a particular contract, or instrument, or order, judgment, or decree of court, which shall confer a special power or authority so to do, and then only with, or to the extent of, the moneys or funds thereby provided and belonging to such par-

ticular trust. Such corporation is authorized to loan money and to purchase notes, bonds, mortgages, and other evidences of indebtedness, and other securities, subject to the limitations imposed upon banking associations as to investments, and to convert the same into cash and other securities;

"2. * * *

"3. To take, accept, and hold on deposit for savings account or for safekeeping, or in escrow, or for investment, any and all moneys, bonds, stocks, and other securities, or personal property whatsoever. When any savings deposit shall have been received from a minor, the repayment of the same to such minor or his order shall be a complete discharge of such corporation from any further liability therefor. Whenever any officer or person, public or private, or any fiduciary, shall be authorized to pay into or deposit in any court any moneys, securities, or personal property whatsoever, the same instead of being deposited with or paid into court may be paid into or deposited with any corporation organized and acting under this chapter which may be designated for that purpose by the court having jurisdiction of the subject matter, or by the person owning or controlling such property. Whenever any fiduciary shall deposit any moneys, securities, or any personal property whatsoever, belonging to his trust, with any corporation qualified and acting under this chapter and shall take a receipt of such corporation therefor, he and his sureties thereafter shall be relieved from all liability therefor until the same again shall be delivered to him by such corporation;

"4. * * *

"5. To provide by its bylaws and regulations for the payment of interest or dividends, for the investment of moneys, and conditions for repaying or withdrawing the same. It shall have authority to borrow money upon the security of its own property or credit; * * *."

Sections 6–01–02, 6–02–01, 6–05–01, and 6–05–02, NDCC, were amended by Chapter 93, S.L.N.D.1963, which went into effect March 21, 1963. The defendant was organized, began its operations as a trust company, and later extended its field of activity into the general banking business all prior to 1963. We examine the pertinent statutes contained in the North Dakota Century Code prior to the amending act in order to determine powers originally vested in the defendant. We will later consider the effect of Chapter 93 on the original statutes.

Referring again to Section 6–01–02, NDCC, from which we quoted certain definitions, we find that trust companies were excluded from the definition of "banking associations" but were included in the definition of "banking institutions." All of Chapter 6–02 and some sections of 6–03 deal with the organization, qualification, powers, management and operation of banking associations to the exclusion of trust companies. Chapter 6–05, on the other hand, provides for the organization, powers, management and regulation of annuity, safe deposit, surety, and trust companies which come within the definition of banking institutions but not banking associations. Both are corporations but differ widely in requirements of organization, qualification, powers, scope of activities, and stringency of authorization and regulation. As we have already noted, the corporate life of a banking association is twenty-five years. That of a trust company is perpetual. A banking association may be formed by any number of natural persons, not less than

three, at least two-thirds of whom must be residents of the state, while not less than nine persons, only three of whom must be residents of the state, may form a corporation for the purpose of transacting business as an annuity, safe deposit, surety and trust company. Banking associations are not permitted to hold title and possession of certain real estate for a longer period than five years. Section 6-03-09. There is no similar restriction on trust companies. Section 6-03-10, NDCC, provides:

> "Any banking association violating the provisions of the preceding sections of this chapter relating to powers, at the discretion of the state banking board, shall forfeit its charter. Any officer, director, or employee who knowingly violates or permits the violation of any of such provisions is guilty of a misdemeanor."

We find no similar provision in Chapter 6-05 pertaining to annuity, safe deposit, surety, and trust companies. Neither has the section quoted been made applicable to such companies by reference.

Section 6-05-34 lists a number of sections of Title 6 of the Code that are made applicable to corporations organized under Chapter 6-05, but none of these sections authorizes trust companies to accept demand deposits or otherwise engage in the general banking business.

■ The defendant and appellant points to paragraph 3, Section 6-05-08, NDCC, which enumerates corporate powers of trust companies and includes the power

> "To take, accept, and hold on deposit for savings account or for safekeeping, or in escrow, or for investment, any and all moneys, bonds, stocks, and other securities, or personal property whatsoever"

and argues that this provision at least by implication authorizes trust companies to accept and pay out deposits on general checking account. We do not agree with this construction. If any implication is to be drawn from that provision it is that it is exclusive with respect to the specified deposits. We note also that under Chapter 6-04, NDCC, which provides for the organization, powers and operation of savings banks, that annuity, safe deposit and trust companies are permitted to receive savings deposits without complying with that chapter. No similar provision is contained in Chapters 6-02 and 6-03, pertaining to banking associations, which would confer on trust companies general banking powers or permit them to accept demand deposits.

■■ We reach the conclusion that under the provisions of Chapters 6-01, 6-02, and 6-03 of the Century Code the law provides for banking associations which may do a general banking business including the maintenance of demand deposit accounts. They are organized, certified and regulated under statutes a number of which apply exclusively to such associations. Annuity, safe deposit, surety and trust companies which are organized and regulated pursuant to Chapter 6-05, NDCC, are banking institutions which do not possess all of the powers of banking associations and under the statutes contained in the Century Code were not empowered to conduct a general banking business. The acts of the defendant in this respect were ultra vires the corporation under the provisions of the Century Code.

We now turn to Chapter 93, S.L.N.D. 1963, to determine whether or not the amendments provided thereby empower the defendant to engage in the general banking business. The first section of the amending act amends and re-enacts Section 6-01-02, NDCC, which sets forth definitions of various terms used in Title 6 pertaining to banks and banking. No changes were made in the definitions of "state banking association" and "banking institution." The distinctions between banking associations and banking institutions which are so apparent in Chapters 6-01, 6-02 and 6-05, NDCC, remain undisturbed. However succeeding

portions of Chapter 93 do make some changes with respect to the powers and restrictions applicable to banks and to trust companies.

Section 2 of Chapter 93 amends and re-enacts Section 6–02–01, NDCC. The first part of the amended section deals with the use by corporations of the words "bank," "banker," "banking," "savings bank," or words of like import in connection with the business of such institutions. However the changes made by the amendment in these respects have little significance in determining the powers of banks and trust companies. The important part of the amendment is the addition of the following provision:

"Any trust company duly granted a charter to engage in banking business upon compliance with this chapter, shall be subject to the state banking board in its banking operations as is the case for other chartered banks, and all the laws relating to banks in this title are thereafter applicable. Any trust company, hereafter organized which has not secured a hearing and determination by the state bank board under the provisions of sections 6–02–05 and 6–02–06, shall not engage in banking business except for the power provided under chapter 6–05."

The judgment appealed from enjoined and restrained the defendant "from engaging in commercial banking" and further determined that "defendant's activities be confined to that authorized by Chapter 6–05 of the North Dakota Century Code until such time as the defendant has complied with the applicable provisions of Chapters 6–02 and 6–03 of the North Dakota Century Code and shall have received a duly authorized certificate of authority or charter to engage in commercial banking."

 The provision added to Section 6–02–01, NDCC, by the amendment consists of two sentences. The first sentence by clear implication permits an existing trust company to obtain a charter to engage in banking business upon compliance with Chapter 6–02, and thereafter all laws relating to banks in Title 6 are applicable to its powers and the conduct of its banking business. It is clear from this record that the defendant has not so complied. The charter of a corporation is not merely its articles of incorporation, but includes all statutes which confer, define or limit its powers. In re Hanson's Estate, 38 S.D. 1, 159 N.W. 399. In event of a conflict between the powers conferred by statute and those set forth in the articles of incorporation, the law is supreme. State ex rel. Dunker v. Spink Hutterian Brethren, 77 S.D. 215, 90 N.W.2d 365. The statutes under which a corporation is created rather than statements in the charter with reference to the objects and powers of the corporation control its charter powers. Fletcher Cyclopedia Corporations, Permanent Edition, Section 2478. The State Banking Board, not the Secretary of State, determines when a corporation is qualified to do business as a banking association.

Apropos of the relief sought, we would quote from Declaratory Judgments, Borchard, 1934, page 500:

"One of the commonest forms of challenge to the validity of corporate action is by a request for a declaration of its nullity on the part of the person affected. This may be a stockholder, member, director, officer, public official, or third party. The action necessarily involves the construction of the statutes or agreement of the corporate body in the light of the issue raised. This is an inexpensive remedy available to dissatisfied or unnotified minority interests to challenge promptly and effectively the validity of majority action."

The defendant argues that in any event the court should not have, at the instance of these plaintiffs, enjoined the defendant from continuing to conduct its general banking business.

It is argued that the plaintiffs were advised prior to the special meeting of the stockholders that it was proposed to amend the articles of incorporation to change the name and to expand the corporate powers of the defendant to include the conduct of a general banking business, that it was their duty to appear at the meeting and protest the proposed action, and having failed to do so they cannot be heard to say that they are not bound. In other words, it is urged that the plaintiffs are estopped to challenge the action taken, by their failure to attend the meeting and protest. There is no claim that the plaintiffs participated in the unauthorized business or accepted any benefits thereof.

■ We have determined that at the time the defendant attempted to amend its articles of incorporation and at the time that it entered into the general banking business, such an association had no power under the statutes to engage in general banking. It could not obtain such power by amending its articles of incorporation. Its acts in both respects were ultra vires and void under express statutory provisions. In Section 5915.1, Fletcher Cyclopedia Corporations, Permanent Edition, it is said:

"The relation of a stockholder to the corporation is similar in some ways to that between a beneficiary and a trustee. The property and business relations wtih the outside world are held by the corporation as a distinct legal person. The stockholders are the ultimate beneficiaries for whom the business is being conducted by their representatives. They have the right to have the corporate property and affairs managed for their benefit in accordance with the charter. Any stockholder, therefore, may maintain a bill of equity in his own name, to enjoin a threatened misapplication or diversion of its assets, or to enjoin ultra vires acts or contracts which will result in such a misapplication or diversion."

Section 761, 13 Am.Jur., Corporations, states:

"Any act done by a corporation, not authorized under powers expressly or by necessary implication conferred upon it by law, is a breach of the contract between the corporation and each of its stockholders, who have a right to object to such acts by the corporation. In a proper case, a stockholder may apply to a court of equity for a preventive remedy by injunction to restrain a corporation or those who are administering its affairs from exercising or attempting to exercise powers the corporation does not possess. The profitableness or unprofitableness of a transaction by a corporation, which is ultra vires, does not affect the right of a stockholder to contest it. When, however, the stockholder participates in, and consents to, ultra vires transactions by the corporation or accepts pecuniary benefits thereunder, he is generally estopped as against the corporation from calling in question the validity of such acts, and he may also lose his right to object by reason of laches."

■ The relief sought by the plaintiffs includes restraining the defendant from engaging in the ultra vires acts herein discussed until it had complied with the applicable provisions of Chapters 6–02 and 6–03, NDCC, and received a charter to engage in commercial banking. In Great Northern Railway Co. v. Mustad, 76 N.D. 84, 33 N.W.2d 436, this Court said:

"Where coercive or executory relief ancillary or supplemental to declaratory relief is warranted by the facts alleged in the complaint, such relief may be granted when prayed for if the facts be established as alleged; and where such relief is not granted, and

it thereafter appears that supplemental relief is necessary in order to render the declaratory judgment effective, such relief may be granted on proper application."

Authorities generally support the principle thus stated, among them being Town of Blooming Grove v. City of Madison, 275 Wis. 328, 81 N.W.2d 713, in which it is said:

"Injunctive relief may be granted in aid of a declaratory judgment, where necessary or proper to make the judgment effective. Morris v. Ellis, 221 Wis. 307, 315, 266 N.W. 921. The granting or refusal of an injunction lies in the sound discretion of the trial court."

In a proper case, including an action for a declaratory judgment, the court may enjoin ultra vires acts of a corporation. This is such a case.

█ The trial court, in a finding with which we agree, determined that none of the plaintiffs consented to any illegal commercial banking functions performed by the defendant. We conclude that the plaintiffs are not estopped from challenging the ultra vires acts of the defendant and that the trial court acted within his judicial discretion in enjoining the defendant as set forth in the judgment. The judgment is affirmed.

TEIGEN, BURKE, ERICKSTAD and STRUTZ, JJ., concur.

On Petition for Rehearing.

MORRIS, Commissioner.

The appellant filed a petition for a rehearing. A study of its contents discloses that the arguments presented pertain to questions which have been thoroughly considered by the court or that are without controlling effect on the decision of the case. A rehearing is denied.

In addition to asking for a rehearing, the petition contains the following request:

"If at the final conclusion of this litigation it is determined that the appellant must terminate its acceptance of demand deposits accounts, we request the court to grant a reasonable time for it to divest itself of these accounts during which time the enforcement of any injunction will be stayed."

█ It appears to the court that it is compatible with justice and the public interest that the appellant be afforded a reasonable time to adjust its affairs to comply with the judgment. The enforcement of the injunction provided for in the judgment is hereby stayed for sixty days from the date of the remittitur of the Supreme Court, with leave to the appellant to make application to the District Court within that period, upon a proper showing and notice to respondents, for an extension of the stay for such additional time as that court may deem reasonable.

PER CURIAM.

The foregoing opinion on petition for rehearing by the Honorable James Morris, a retired judge and duly appointed and qualified Commissioner of the Supreme Court, is adopted and made the opinion and decision of the court.

BURKE, C. J., and TEIGEN, STRUTZ and ERICKSTAD, JJ., concur.