540 F.2d 343
 In re First American Bank & Trust Company, Bankrupt.
FIRST AMERICAN BANK & TRUST COMPANY, Appellant,
v.
Harry W. GEORGE, Receiver, First American Bank & Trust
Company, Appellee.
 No. 75-1771.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 11, 1976.
Decided July 22, 1976.
 
 Robert O. Wefald, Wheeler, Wolf, Wefald & Durick, Bismarck, N. D., for appellant.
 Max D. Rosenberg, Conmy, Rosenberg & Lucas, P. C., Bismarck, N. D., for appellee.
 Before WEBSTER and HENLEY, Circuit Judges, and TALBOT SMITH, Senior District Judge.*
 WEBSTER, Circuit Judge.
 
 
 1
 First American Bank & Trust Company of Bismarck, North Dakota, appeals from an order of the District Court affirming the Bankruptcy Court's dismissal of its petition for Chapter XI arrangement proceedings. The Bankruptcy Court[1] dismissed the petition because it found that First American was a "banking corporation" and thus not entitled to the benefits of Chapter XI, since "banking corporations" are excluded from bankruptcy jurisdiction by Section 4 of the Bankruptcy Act, 11 U.S.C. § 22.
 
 
 2
 The facts pertinent to this appeal are not extensive. On February 14, 1963, First American received its original certificate of incorporation from the North Dakota Secretary of State in the name of "American Trust Company". First American was incorporated pursuant to Chapter 6-05 of the North Dakota Century Code, which provides for the organization, powers, authority, and regulation of annuity, safe deposit, surety, and trust companies. The certificate was amended on April 24, 1964, to change the name to "American Trust & Deposit, Inc." The certificate was again amended on July 1, 1966, to change the name to the present "First American Bank & Trust Company", after the Attorney General of North Dakota had issued an opinion indicating that trust companies could use the word "bank" in their corporate names.
 
 
 3
 On December 11, 1972, the North Dakota State Banking Board issued an order appointing a receiver over First American based upon its holding that the institution was insolvent and guilty of fraudulent acts. See § 6-01-06 N.D.Cent.Code. This order was affirmed by the Supreme Court of North Dakota. First American Bank & Trust Co. v. Ellwein, 221 N.W.2d 509 (N.D.), cert. denied, 419 U.S. 1026, 95 S.Ct. 505, 42 L.Ed.2d 301 (1974). From December 14, 1972, to March 6, 1975, First American was placed under a conservatorship of the State Banking Examiner. The administrative receiver took possession on March 6, 1975, and was in the process of liquidating First American when the voluntary petition in bankruptcy was filed on April 25, 1975.
 
 
 4
 On April 29 and 30, 1975, motions to dismiss the petition in bankruptcy were filed by Harry W. George, the administrative receiver of First American, and Frank F. Jestrab, a Special Assistant Attorney General of North Dakota representing the State Banking Board. Both motions asserted that the Bankruptcy Court was without jurisdiction to entertain the petition because First American was a "banking corporation" under the exception of Section 4.
 
 
 5
 The Bankruptcy Court assessed the authority granted First American by Chapter 6-05 of the North Dakota Century Code, and also explored the activity actually engaged in by First American, finding as follows:
 
 
 6
 The alleged bankrupt did very little business as a trust company, no business as an annuity, surety, fidelity, nor any business in the area of certifying abstracts of title. Its business consisted primarily of receipt of time deposits and making of loans, cashing of checks and issuing of drafts and other bills of exchange.
 
 
 7
 Noting that North Dakota has classified corporations such as First American as "banking institutions" and that Chapter 6-07 of the North Dakota Century Code provided for liquidation of this type of enterprise, the Bankruptcy Court held that First American was engaged in the business of "banking" as defined by state law. It further held that the designation "banking institution" under Section 6-01-02 of the North Dakota Century Code was the same as the term "banking corporation" under Section 4 of the Bankruptcy Act, and that First American was therefore a "banking corporation" under Section 4 and excluded from the benefits of the Bankruptcy Act. The petition for bankruptcy was thus dismissed for lack of subject matter jurisdiction.
 
 
 8
 On appeal, the District Court[2] found the Bankruptcy Court's findings and conclusions to be supported by substantial evidence and not based on substantial error in the proceedings or on a misapplication of controlling law. It accordingly affirmed by order the judgment of the Bankruptcy Court. First American appeals from this order, contending simply that it is not a "banking corporation" within Section 4 and that it should be entitled to initiate voluntary bankruptcy proceedings.
 
 
 9
 Section 4 of the Bankruptcy Act, 11 U.S.C. § 22, provides in pertinent part:
 
 
 10
 (a) Any person, except a municipal, railroad, insurance, or banking corporation or a building and loan association, shall be entitled to the benefits of this Act as a voluntary bankrupt.
 
 
 11
 (b) Any * * * moneyed, business, or commercial corporation, except a building and loan association, a municipal, railroad, insurance or banking corporation, * * * may be adjudged an involuntary bankrupt * * * and shall be subject to the provisions and entitled to the benefits of this title. * * * (emphasis added)
 
 
 12
 The term "banking corporation", however, is not elsewhere defined. This Court observed in Gamble v. Daniel, 39 F.2d 447, 450 (8th Cir.), appeal dismissed, 281 U.S. 705, 50 S.Ct. 464, 74 L.Ed. 1129, cert. denied, 282 U.S. 848, 51 S.Ct. 27, 75 L.Ed. 752 (1930):
 
 
 13
 The most natural meaning of the words is: A corporation empowered to do a banking business.
 
 
 14
 * * * When Congress spoke of "banking corporations" it spoke as of 1910. It used the words in no technical nor special sense, but as they were then ordinarily understood.
 
 
 15
 For further guidance, the courts have traditionally made reference to the applicable state laws to determine (1) how the entity is classified under state law, (2) what powers are granted to the entity, and (3) what activities actually engaged in were within the range of lawfully conferred powers. See Sims v. Fidelity Assur. Ass'n, 129 F.2d 442, 448-51 (4th Cir. 1942), aff'd on other grounds, 318 U.S. 608, 63 S.Ct. 807, 87 L.Ed. 1032 (1943); In re Union Guarantee & Mortgage Co., 75 F.2d 984, 985 (2d Cir. 1935); Woolsey v. Security Trust Co., 74 F.2d 334, 335-37 (5th Cir. 1934); Kansas ex rel. Boynton v. Hayes, 62 F.2d 597, 598-601 (10th Cir. 1932). See generally 1 J. Moore, Collier on Bankruptcy P 4.05(2), at 591-93 (14th ed. 1974). The utilization of the incorporating state's classification of the corporation does not mean that state law will be followed literally without regard to an assessment of the actual operation of the petitioning corporation. As stated in Sims v. Fidelity Assur. Ass'n, supra, 129 F.2d at 451:
 
 
 16
 (The) authorities establish the rule that in determining whether a corporate debtor is a member of the excepted classes, the provisions of the state law must be given predominating influence. This is not to say that the classification of a state statute must be followed literally in every instance without any regard whatsoever to the real activity of the corporate body. The course of decisions, even in the Second Circuit, where perhaps the rule of state classification has been most strongly stated, indicates that the spirit rather than the letter of the local statutes should prevail * * *.
 
 
 17
 See also Empire Title & Guarantee Co. v. United States, 101 F.2d 69, 71-72 (2d Cir. 1939); In re Prudence Co., 79 F.2d 77, 79-80 (2d Cir.), cert. denied, 296 U.S. 646, 56 S.Ct. 247, 80 L.Ed. 459 (1935).
 
 
 18
 Section 6-01-02 of the North Dakota Century Code provides the following definitions of enterprises related to the business of banking:
 
 
 19
 2. "State banking association", any corporation organized under the laws of this state covering state banking associations or savings banks, and all corporations, partnerships, firms, or associations whose business in whole or in part consists of the taking of money on deposit, excepting national banks, trust companies, and the Bank of North Dakota;
 
 
 20
 3. "Banking institution", any bank, trust company, bank and trust company, stock savings bank, or mutual savings bank organized under the laws of this state;
 
 
 21
 4. "Trust company", any corporation formed for the purpose of transacting business as an annuity, safe deposit, surety, or trust company;
 
 
 22
 8. "Banking", the business of receiving deposits, making loans, discounting commercial paper, issuing drafts, travelers' checks, and similar instruments, handling and making collections, and cashing checks and drafts, or buying and selling exchange;
 
 
 23
 9. "Bank", any association, firm, or corporation engaged in the business of banking.
 
 
 24
 In Nelson v. Dakota Bankers Trust Co., 132 N.W.2d 903, 909-12 (N.D.1964), the North Dakota Supreme Court held that an enterprise incorporated under Chapter 6-05 had no power to engage in "general banking business" as could those banking associations chartered under Chapters 6-02 and 6-03. As Nelson holds, and Section 6-01-02 specifically provides there is a definite distinction under North Dakota law between a "trust company" and a "state banking association", and yet each is a "banking institution". Indeed, in State ex rel. Holloway v. First American Bank & Trust Co., 186 N.W.2d 573, 576 (N.D.1971), the North Dakota Supreme Court held that First American itself was a "trust company" and not a "state banking association". As will become more apparent, however, this distinction, significant under state law, does not preclude a finding that First American was a "banking corporation" within the meaning of Section 4 of the Bankruptcy Act.
 
 
 25
 As a "trust company" and "banking institution", First American is subject to the extensive regulatory authority of the State Banking Board. See State ex rel. Holloway v. First American Bank & Trust Co., supra, 186 N.W.2d at 578-79. See also First American Bank & Trust Co. v. Ellwein,supra ; First American Bank & Trust Co. v. Ellwein, 198 N.W.2d 84 (N.D.1972). Moreover, North Dakota specifically provides for liquidation of the type of business engaged in by First American under Chapter 6-07 of the North Dakota Century Code.[3] While this alone does not require that First American be considered within the Section 4 exception, see Sims v. Fidelity Assur. Ass'n, supra, 129 F.2d at 451; In re Prudence Co., supra, 79 F.2d at 79, it is indicative of the state's intent to provide, in the interest of depositors and other members of the public dealing with such an enterprise, the supervisory and administrative safeguards accorded the liquidation of other "banking institutions". Cf. Woolsey v. Security Trust Co., supra, 74 F.2d at 337.[4]
 
 
 26
 In its operation as a "banking institution", First National exercises substantial powers pursuant to Chapter 6-05 of the North Dakota Century Code. They include, as stated in Section 6-05-08:
 
 
 27
 (T)he power and authority:
 
 
 28
 1. * * * (T)o loan money and to purchase notes, bonds, mortgages, and other evidences of indebtedness, and other securities, subject to the limitations imposed upon banking associations as to investments, and to convert the same into cash and other securities;
 
 
 29
 3. To take, accept, and hold on deposit for savings account or for safekeeping, or in escrow, or for investment, any and all moneys, bonds, stocks, and other securities, or personal property whatsoever. * * *
 
 
 30
 5. To provide by its bylaws and regulations for the payment of interest or dividends, for the investment of moneys, and conditions for repaying or withdrawing the same. * * *
 
 
 31
 In the assessment of such power and authority, this Court has previously provided a generalized interpretation of the term "banking corporation" under Section 4 of the Bankruptcy Act:
 
 
 32
 (In 1910, at the time of the adoption of the "banking corporation" exception), the ordinary conception of a bank was of a business which was based primarily on the receipt of deposits (general or special), which deposits were used by the bank for loans, discounts, buying and selling commercial paper, and other business purposes. None but national banks could then issue bank notes as currency. The prime incentive in engaging in the business was the profit to be made, directly or indirectly, from the use of deposits. Most of the then existing state legislation concerning banks had as its principal purpose the protection of such depositors. Much of the right to regulate banks was the public interest in protecting depositors. Banking has been a development, and the above was its status in 1910. Other businesses might and did, and still do, deal in commercial paper, make loans or borrow money without any one thinking of them as banks. When a business takes deposits and then does the above or related things, every one knows it is doing a banking business. * * * In short, while there may be other attributes which a bank may possess, yet a necessary one is the receipt of deposits which it may use in its business.
 
 
 33
 Gamble v. Daniel, supra, 39 F.2d at 450-51. See Oulton v. German Savings and Loan Society, 84 U.S. (17 Wall.) 109, 118-19, 21 L.Ed. 618 (1872).
 
 
 34
 Pursuant to Section 6-05-08, First American had the authority to receive savings deposits. The evidence supports the finding of the Bankruptcy Court that the principal business of First American was actually that of receiving savings deposits, making loans, cashing checks, and issuing drafts and other bills of exchange.[5] There is no contention that such deposits were not used by First American in its business.
 
 
 35
 Section 6-05-08 has been held not to provide implied authorization for "trust companies" to accept and pay out demand deposits. Nelson v. Dakota Bankers Trust Co., supra, 132 N.W.2d at 910. The inability of First American to undertake demand deposits distinguishes it from status as a "state banking association" under North Dakota law. Section 4 of the Bankruptcy Act, however, does not exclude "banks"; it is addressed to "banking corporations". Under Chapter 6-05, North Dakota law establishes a corporation, which it terms a "banking institution", which may conduct as its primary business the receipt of savings deposits, extension of loans, cashing of checks, and issuance of drafts and other bills of exchange. Such a business is clearly, even in the absence of demand deposits, that of banking. See Kansas ex rel. Boynton v. Hayes, supra, 62 F.2d at 600; Gamble v. Daniel, supra, 39 F.2d at 450-51. See also Oulton v. German Savings and Loan Society, supra, 84 U.S. (17 Wall.) at 118-19. Deposits need not be payable on demand; the test under Gamble v. Daniel is whether they may be used in the company's business. 39 F.2d at 451.
 
 
 36
 The entities excluded under Section 4 of the Bankruptcy Act have these things in common: (1) they are extensively regulated by well-organized departments of the states and of the United States; (2) they are subject to express statutory procedures for liquidation; and (3) the nature of their business is public or quasi-public and involves interests other than those of creditors. See In re Israel-British Bank (London) Ltd., 401 F.Supp. 1159, 1170-74 (S.D.N.Y.1975). See also In re Union Guarantee & Mortgage Co., supra,75 F.2d at 984-85; Woolsey v. Security Trust Co., supra, 74 F.2d at 337; In re Equity Funding Corp. of America, 396 F.Supp. 1266, 1275 (C.D.Cal.1975); In re Supreme Lodge of the Masons Annuity, 286 F. 180, 184 (N.D.Ga.1923). The classification of First American by North Dakota as a "banking institution", the substantial powers which it exercises lawfully in the area traditionally associated with banking, the existence of an extensive state statutory and regulatory scheme for supervision and eventual liquidation of "banking institutions" in that state, and the obvious quasi-public nature of the business form a substantial framework from which the Bankruptcy Court and the District Court could properly conclude that First American was an excluded "banking corporation" and that it therefore could not frustrate state processes by seeking the safe harbor of the Federal Bankruptcy Act.[6] The findings below are thus not clearly erroneous and the order dismissing the petition for lack of subject matter jurisdiction must be affirmed.
 
 
 
 *
 The Honorable Talbot Smith, Senior Judge, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The Honorable Gordon C. Thompson, Bankruptcy Judge for the United States District Courts for the Districts of North Dakota and Minnesota
 
 
 [2]
 The Honorable Bruce M. Van Sickle, United States District Court for the District of North Dakota
 
 
 [3]
 Chapter 6-07 applies to enterprises organized under Title 6 of the North Dakota Century Code, including "banks" (Chapters 6-02 and 6-03), "annuity, safe deposit, surety, and trust companies" (Chapter 6-05), "credit unions" (Chapter 6-06), "municipal bond banks" (Chapter 6-09.4), and "investment trust companies" (Chapter 6-11)
 
 
 [4]
 The congressional purpose in exempting "banking corporations" from the federal bankruptcy laws was identified in Woolsey v. Security Trust Co., 74 F.2d 334, 337 (5th Cir. 1934):
 The letter of that section excludes banking and insurance corporations; its spirit and purpose, to leave the liquidation of the banking corporations of the country to the well-organized departments of the states and the nation, organized for the purpose of supervising while they are going concerns and of liquidating them when they are not, excludes them. Federal laws provide elaborately for the supervision and liquidation of natural banking corporations; the laws of the states do the same for state banks and insurance companies, in order to protect the millions of persons who deal with them on the faith of the protection afforded by direct governmental supervision and control. It was considered that it would be a ruinous thing to the state, to the depositors, and to the creditors to have the elaborate scheme of liquidation which the state provides broken into and nullified by bankruptcy proceedings, and it was intended by withdrawing jurisdiction over these corporations from the bankruptcy court, that this would not occur. It would be directly contrary to the purposes so definitely and comprehensively expressed, to exempt banking corporations from the act, leaving their administration and liquidation to the state and federal systems devised expressly for them, to hold that this bank and trust company is not exempt, chartered though it was under the state banking laws, with banking privileges and powers, operated though it was under those laws, and now being liquidated, as it is, under them.
 
 
 [5]
 The general ledger balance statement of First American dated March 4, 1975, reflected the following deposits:
 Passbook Svgs Deposits ($) 172,964.16
Certificates of Deposit 1,474,168.26
Dealer Reserve Deposits 1,070.31
Escrow Deposits 1,529.93
 ------------
TOTAL TIME DEPOSITS ($) 1,649,732.66
 
 
 [6]
 It is thus seen that under the many provisions of the statutory law of this state trust companies are made banking corporations. That it was not intended by the Legislature of the state that trust companies should be operated, or, in case of insolvency, the affairs of such corporations should be wound up in bankruptcy, the assets converted into cash and distributed under the provisions of the Bankruptcy Act, and that a discharge of the corporation, and its stockholders and directors should be granted from its remaining indebtedness. Of course, it is undoubtedly within the power of Congress to make trust companies of the state, or any other natural or corporate body, or unincorporated company subject to the National Bankruptcy Act, and, if this were done in clear and unequivocal terms, all state laws for their operation in conflict with the act must then be held to yield to the higher force, the national law. But, in the absence of any such express provision of the National Bankruptcy Act, in view of the state laws to which we have referred, and others, it must be held, we think, the provisions of the National Bankruptcy Act do not apply
 Kansas ex rel. Boynton v. Hayes, 62 F.2d 597, 599-600 (10th Cir. 1932).